## THOMAS OWENS et als. *v.* WILLIAM P. DAVIS.

In the absence of an express stipulation to the contrary, the owners of a steamboat employed in carrying persons and merchandize for hire, bring the *use* only, and not the *property* of the boat, into the partnership—they hold as tenants in common.

In case of proceedings for the distribution of the proceeds of a steamer, the suit of the attaching creditor is not stayed by order of the Judge, nor by operation of law ; nor is he actually or virtually enjoined from proceeding to judgment against his debtor, and acquiring a right of privilege on the proceeds of the property attached ; nor from proceeding to execution and sale of the property itself for the satisfaction of his debt. In all such cases, the property is not vested in the creditors, but *remains in the debtor* subject to seizure, attachment and execution.

Where a Sheriff has not been authorized as the legal agent of the seizing creditors, to insure property in his custody, he has no authority under the law to effect such insurance, and his claim for the return of the premium paid cannot be allowed as *costs of suit.*

Where judgment has been rendered in favor of partnership creditors against all the part-owners of a steamer, whether they were creditors by privilege, or not, for their respective claims against the boat, they become privilege creditors of each of the part-owners for the amount of costs recovered, and these costs form a privilege debt upon the proceeds of the steamer superior to that of the individual attaching creditors.

Our law grants no privilege for money advanced to the master of a steamboat.

The right of creditors to privileges on property within our jurisdiction, must be determined by the *lex fori* and not by the *lex loci contractus.*

APPEAL from the Fourth District Court of New Orleans, *Price, J.*
*Benjamin, Bradford & Finney,* for plaintiffs and appellants. *Hart & Martin,* for defendant.

LAND, J. The plaintiffs, individual creditors of the defendant, part-owner of the steamer David Yatum, have appealed from the judgment distributing the proceeds of the boat among the partnership creditors of the owners, to the exclusion of the individual creditors ; and present for our decision the following questions of law :

First. Whether, in the absence of an express stipulation to the contrary, the owners of a steamboat, who employ it in carrying persons and merchandize for hire, bring the *use* of the boat only, or the *property* of the boat, into the partnership.

The distinction between part-ownership, and partnership, in ships or other

vessels, is clear and well defined. The general rule is, that part-owners are tenants in common, and not partners. A ship, or other vessel, may be held by part-owners in partnership, but when so held, it is by virtue of some positive stipulation, and forms an exception to the general rule. Mr. Chancellor Kent says : " The cases recognize the clear and settled distinction between part-owners and partners. Part-ownership is but a tenancy in common, and a person who has only a part-interest in a ship, is generally a part-owner, and not a joint tenant or partner. As part-owner, he has only a disposing power over his own interest in the ship, and he can convey no greater title. But there may be a partnership, as well as a co-tenancy, in a vessel ; and in that case, one part-owner, in the character of partner, may sell the whole vessel, and he has such an implied authority over the whole partnership effects. The vendee, in a case free from fraud, will have an indefeasible title to the whole ship. When a person is to be considered as a part-owner, or as a partner, in a ship, depends upon circumstances. The former is the general relation between ship owners, and the latter the exception, and requires to be specially shown." 3 Kent, 154.

This doctrine has been applied by this court to the case of part-owners of steamboats employed in carrying persons and property for hire ; and it has been held, in the absence of an express stipulation to the contrary, that the *use* of the boat only is brought into the partnership, and not the property or ownership of the boat, which remains in the part-owners, as tenants in common, subject, however, to the privileges which the law grants, in certain cases, to the creditors of the partnership. *Byrne* v. *Harper*, 2 R. 229 ; *Violett* v. *Fairchild*, 6 An. 193 ; *Whipple* v. *Hill*, 14 An. 437. In this case, *Jackson & McGill*, creditors of the partnership, contend that *it is specially shown*, that the steamer was partnership property, and held by the part-owners as such. The evidence on which they rely is a mandate or power of attorney, from three of the part-owners to the defendant, who was the fourth, granting to him authority to sell the boat. The mandate declares the powers conferred upon the defendant, in these words : " We have constituted and appointed the said *W. P. Davis*, our true and lawful attorney, for us and in our name and behalf, to sell, or run the said steamer, as to him shall seem fit and proper ; and in the event of a sale of said steamer, to make and execute a bill or bills of sale in our name and for our interest."

This power of attorney, as evidence, is against the pretensions of these creditors. It is an admission that the steamer was held in co-tenancy, and that defendant, as partner, had no authority to sell; for, if the boat was held in partnership, the defendant, as partner, had a right to sell the whole interest, without any power of attorney from his co-partners, and it was, therefore, a useless instrument. *Lamb* v. *Durant*, 12 Mass. 54. The mandate did not authorize the defendant to sell the steamer as partnership property, nor on partnership account, but to sell in the *name* and for the *interest* of the individual part-owners granting the power. It is, therefore, what it purports to be, a simple mandate, and not a contract of partnership, nor a contract constituting the steamer partnership property as between the owners.

Secondly. Whether the plaintiffs are entitled to be paid by preference to the ordinary creditors of the partnership, out of the proceeds of the share of the defendant in the steamer, by virtue of their attachment. They were the first attaching creditors, and obtained judgment with privilege on the one-fourth interest, or share of the defendant, in the boat, subject to the distribution of the proceeds of the sale.

The ordinary creditors of the partnership are those who have no privilege on the boat; and they stand in the position of partnership creditors seeking to be paid out of the proceeds of the individual property of the partners, in concurrence with their individual creditors, as they have a right to do, unless the individual creditors are entitled to be paid, by preference to them, in virtue of privileges or liens allowed by law. *Flower* v. *His Creditors*, 3 An. 189 ; C. C. 3150. The privilege recognized by the judgment in favor of plaintiffs, must have its effect, unless prohibited by some provision of law, or unless its enforcement contravenes the policy of the law. There is no express provision of law making the acquisition of a right of privilege, in cases of this kind, an exception to the general rule, by which an attaching creditor acquires a right to be paid by preference out of the proceeds of the property attached ; and although the property of the debtor is declared to be the common pledge of his creditors, yet the law in many instances destroys the equality of distribution, by granting privileges or mortgages to creditors, or by permitting them, by suits or contracts, to acquire a right to be paid by priority, or preference, out of the proceeds of a part, or of the whole of the debtors property. A suit by attachment is one of the actions at law, by which a creditor is allowed to acquire a privilege on the property of his debtor ; and, on general principles, the right of the plaintiffs to be paid by preference, by virtue of their attachment, is beyond question. But in the case of a forced or voluntary surrender, under our insolvent laws, an attaching creditor is not entitled to a privilege on the proceeds of the property attached, unless his right of privilege is perfected by the rendition of judgment prior to the surrender of the insolvent. And as proceedings for the distribution of the proceeds of a steamer among the partnership and individual creditors of the owners are in the nature of insolvent proceedings, it may not be immaterial to consider whether the attaching creditor in the former class of cases, loses his right of privilege, if it is not perfected by judgment prior to the intervention and claim of other creditors. .

In the case of a surrender, all suits against the person and the property of the debtor are stayed, and his property is vested in his creditors, so far as to be no longer liable to seizure, attachment, or execution, and the attaching creditor is consequently inhibited from proceeding in his suit, to judgment against the debtor, and from perfecting his inchoate right of privilege by a decree, and in the *concurso*, is ranked only as an ordinary creditor. The legal grounds on which a privilege has been denied to the attaching creditor, in such cases, are clear and well settled. At the time of the surrender, the creditor had no privilege, his suit against the debtor was stayed, and he was thereby virtually enjoined from proceeding to judgment, and acquiring a privilege on the proceeds of his debtor's property, and his rank, of course, was that of an ordinary creditor in the *concurso*.

In the case of proceedings for the distribution of the proceeds of a steamer, THE LAW IS ENTIRELY DIFFERENT. The suit of the attaching creditor is not stayed by order of the Judge, nor by operation of law ; nor is he actually or virtually enjoined from proceeding to judgment against his debtor, and acquiring a right of privilege on the proceeds of the property attached ; nor from proceeding to execution and sale of the property itself for the satisfaction of his debt. In all such cases, the property is not vested in the creditors, *but remains in the debtor*, subject to seizure, attachment, and execution. The provisions of law, therefore, which prevent the right of privilege from attaching in the case of a surrender, do not exist, nor apply in a case of distribution.]

Where a privilege has been fairly acquired in course of legal proceedings, and has been recognized by judgment in favor of the creditor, or granted by operation of law, on the property of the debtor, it must have its legal effect, which is, a right to be paid by preference, to the ordinary creditors of the debtor, out of the proceeds of the property seized or attached. This doctrine was recognized in the case of *Violett* v. *Fairchild,* 6 An. 193, and seems to be a necessary consequence of the provisions of law granting privileges to creditors, on the property of their debtors. The plaintiffs having acquired a privilege on the individual property of the defendant in due course of legal proceedings, are entitled to the benefit of the same, over the ordinary creditors of the partnership.

Thirdly. Whether the Sheriff is entitled to be paid out of the proceeds of the steamer, the premium advanced by him for insurance on the boat, during the period she was under seizure, in this port.

The Sheriff was not authorized by the seizing creditors, as *their legal agent,* to effect the insurance on the boat, and the solution of the question depends entirely upon the extent of his official powers and duties as Sheriff, resulting from the seizure under the writs of attachment.

In cases of attachment, the duties of the Sheriff are declared as follows : The Sheriff must take charge, and keep possession of all the goods and effects which he may have attached, with the exception of such sums which may be due by the garnishee; and he shall make, in the presence of two witnesses, an exact and minute inventory of the same, which he shall be bound to deliver or send, annexed to his return, to the office of the Clerk of the court, whose mandate he has executed. C. P. Art. 257.

In cases of sequestration, his powers and duties are declared in the following words : The Sheriff, while he retains possession of sequestered property, is bound to take proper care of the same, and to administer the same, if it be of such nature as to admit of it, as a prudent father of a family administers his own affairs. He may confide them to the care of guardians or overseers, for whose acts he remains responsible, and he will be entitled to receive a just compensation for his administration, to be determined by the court, to be paid to him out of the proceeds of the property sequestered, if judgment be given in favor of the plaintiff. C. P. 283. And in cases of judicial sequestration or deposit, when the Sheriff acts as judicial guardian, his powers and duties are declared as follows : The appointment of a judicial guardian produces, between the person seizing and the guardian, reciprocal obligations. The guardian must use, for the preservation of the effects seized, the care of a prudent father of a family ; he must produce them, either for the discharge of the person who has seized them for sale, or to the person against whom the execution was levied, in case the seizure be raised.

The obligation of the party that has seized the property, consists in paying the guardian his legal fees. C. C. 2949.

From these provisions of the law, it appears that the whole duty of the Sheriff is, to take proper care of the property seized, or attached, and to administer the same while in his possession, as a prudent father of a family administers his own affairs ; and that his whole power is to confide the property to the care of guardians, or overseers, for whose acts he remains responsible. The object of the law, is the *preservation of the property itself,* free from *damage* or *waste,* during the pendency of the suit in which the seizure was made. A careful keeping, with a prudent administration of the property, while in his possession, is the full extent of the Sheriff's official duty, under the law, and if the property should perish, or

4

be destroyed, without any fault or negligence on his part, or on that of his agents, he would not be responsible for the loss, either to the seizing creditors, or owners. But, if it were otherwise, and the law imposed on him the obligation to insure property in his possession under a seizure, then, taking proper care of the property, and administering the same as a prudent father of a family administers his own affairs, would not free him from liability, in the event of a loss by any cause or peril against which an insurance could have been effected by him.

It was not the intention of the Legislature to impose on the Sheriffs of the State the duty of insuring perishable property in their possession under a seizure; and a contrary interpretation would greatly increase the responsibility of Sheriffs, as well as the costs of litigation, and lead to general inconvenience throughout the State.

As the Sheriff was not authorized as the legal agent of the seizing creditors, nor invested by law with authority to effect insurance on the steamer, his claim for a return of the premium paid cannot be allowed *as costs of suit*. The relations which exist between the Sheriff and seizing creditors, are created by express law, and not by custom or usage. The Sheriff may be authorized to act as the agent of the creditors, in effecting insurance on the property seized—but then, he acts as mandatary, and not in his official capacity.

Fourthly. Whether the fee of the curator *ad hoc* appointed by the court to represent the absent part-owners, is a *legal charge* against the *whole* proceeds of the steamer, or only against the portions of the part-owners, by him represented.

And, Fifthly. Whether the Sheriff's costs in the suits instituted by the partnership creditors are *legal charges* against the *whole* proceeds of the boat, and are 'superior in rank to the privileged claim of the plaintiffs, by virtue of their attachment.

These two questions may be considered together, as the fee of the curator *ad hoc* is now made by statute a part of the costs of suit, and as such has to be taxed. Acts of 1857, p. 84, No. 108.

In the suits instituted by the partnership creditors, they obtained judgment against the defendant, as well as the other part-owners of the steamer; and whether they were creditors by privilege or not, for their respective claims, against the boat, they became creditors by privilege, of each of the part-owners, *for the amount of costs recovered*, in their respective suits, and these costs formed a privileged debt upon the proceeds of the steamer superior to that of the plaintiffs, as attaching creditors. C. C. 3204, 3162, 3163.

*Jackson & McGill* claim to be creditors of the partnership by privilege, for money advanced to the master, for the use of the boat. Our law grants no privilege for money advanced to the master of a steamboat. *Hyde* v. *Culver*, 4 An. 9. These creditors also claim a privilege for the money advanced, under a law of Missouri, where the debt was contracted. It is now well settled, that the right of creditors to privileges on property within our jurisdiction, must be determined by the law of the *forum*, and not by the *lex loci contractus*. And as the privilege claimed by these creditors is not allowed by our laws, it must be rejected.

It is, therefore, ordered, adjudged and decreed, that the judgment be reversed, and that the cause be remanded with instructions to the District Judge to reform the tableau of distribution of the proceeds of the steamer David Yatum, in accordance with the principles herein declared, and that the appellees pay the costs of this appeal.