BALDWIN *v.* BLACK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Argued December 2, 3, 1886. — Decided January 10, 1887.

Where, under the Code of Practice of Louisiana, a steam-tug is sequestered by judicial process, and, under Art. 279, the plaintiff in sequestration gives a bond, with surety, to the sheriff, and takes the tug into his possession, and uses her, and afterwards restores her to the sheriff, he is

not liable to the defendant in sequestration for the fruits or revenues of her use.

Being in the lawful possession of the tug, his agent is not liable to the defendant in sequestration, either in contract or tort, in respect to any earnings of the tug, or any compensation for or value of her use.

The claim of the plaintiff in sequestration having been founded on a mortgage on the tug, and it appearing that on a sale of her to him, on a judgment in his favor in the sequestration suit, there was a deficiency in the net proceeds of her sale to pay the mortgage debt and certain lien and privileged debts, having precedence of the mortgage, which the plaintiff in sequestration paid, under subrogations, legal as well as express, to the rights of the creditors holding those debts, between the date of the seizure of the tug and the day of her sale, no cause of action could exist against the plaintiff in sequestration in respect to any earnings received by him from the use of the tug.

This was a suit in Admiralty, *in personam*. The case is stated in the opinion of the court.

*Mr. Robert H. Marr* for appellant submitted on his printed argument.

*Mr. R. H. Browne* for appellee. *Mr. H. C. Miller* for same submitted on his printed argument.

Mr. Justice Blatchford delivered the opinion of the court.

This is a suit in Admiralty, *in personam*, brought in the District Court of the United States for the Eastern District of Louisiana, by Joseph C. Keyser against John W. Black. The substance of the libel is, that Keyser was the owner of the steam-tug C. C. Keyser; that, in October, 1877, the firm of Neafie & Levy, holding a mortgage on the tug, brought suit in a state court in Louisiana, against Keyser, and obtained a writ of sequestration therein, and caused the sheriff to seize the tug and hold it, until, on the application of Neafie & Levy, it was released on bond; that thereupon Black took possession of it, though he had no lawful right to do so, and used it in towing for hire, on the Mississippi River, injuring it and deteriorating its value; that the value of the use and services of the tug, as made use of by Black "for his own behoof and benefit," is $25,000; and that Black, by taking possession of

and using the tug, is liable to Keyser for that amount, "as in an implied contract." The libel prays for a decree that Black pay it to Keyser.

The answer sets up in defence the facts hereinafter recited as those found by the Circuit Court, and denies that there is any contract or obligation, implied or otherwise, on the part of Black to Keyser.

On a hearing, the District Court pronounced for the libellant, and, on the report of a commissioner, entered a decree that A. S. Baldwin and J. Levy & Co. "subrogated to the rights of the libellant on undivided halves," recover from Black $506.86. Black appealed to the Circuit Court, as also did Baldwin and Levy & Co. The Circuit Court made a finding of facts, of which only the following are material in the view we take of the case:

1. In October, 1877, Neafie & Levy, of Philadelphia, were creditors of Keyser, the libellant, for $18,164, with interest, for which amount they had a mortgage upon the tug, the debt being for the price of the tug built by them for Keyser.

2. On October 11, 1877, they began suit in the Third District Court for the Parish of Orleans to collect that debt. They sequestered the tug in accordance with the law, and in due course recovered judgment against Keyser for the full amount of their debt, with interest, and issued execution against him. The tug was sold, under the execution, to them, the judgment recognizing their mortgage, for $16,075, the amount was credited on their debt, and there remained due to them by Keyser, on the judgment, after giving him credit for all that was made on the execution, $3387, with interest.

3. During the pendency of that suit, the tug not having been bonded by Keyser during the ten days allowed by law to him to bond her, Neafie & Levy afterwards bonded her and she was discharged, under the order of the court, into their possession, under the release bond furnished by them under and in accordance with the 279th and 280th Articles of the Code of Practice. Black, the defendant, was the surety of Neafie & Levy in the release bond, and was their agent to receive and hold possession of the tug, and, under the order of release, did receive and hold possession of her for them.

4. The tug was held under the release bond, by Neafie & Levy, through the defendant, as their agent, from October 25th, 1877, to January 10th, 1878, on which date she was returned to the custody of the sheriff. She was held by him under the writ of sequestration in the suit of Neafie & Levy against Keyser, until May 6th, 1878, when she was sold under the execution, issued in that suit, to satisfy the judgment therein.

5. From October 25th, 1877, to December 27th, 1877, the tug was in actual use in the business of towing vessels, by Black, with the authority and under the direction of Neafie & Levy, to whom he accounted for all her earnings; and he acted throughout, in becoming surety, and in receiving, holding, and using the tug, as agent for Neafie & Levy.

6. The net amount of earnings so accounted for, and paid to Neafie & Levy by Black, over expenses and disbursements incident to the employment of the tug, was $2588.88.

7. When the tug was seized by Neafie & Levy under their mortgage, she was encumbered with lien and privileged debts to the amount of $4488.17, all of which, taking precedence of their mortgage, were paid by them under subrogations, legal as well as express, to the rights of the creditors holding those debts, the debts having been created by Keyser, and being his debts, discharged by them, between the date of the seizure of the tug under their sequestration and the day of the sale by the sheriff to them.

On those facts the court found, as conclusions of law:

1. That Black was lawfully in possession of the tug as the agent of Neafie & Levy, who were lawfully in control of her under the order of a court of competent jurisdiction.

2. That there was no liability on the part of Black, *ex contractu* or *ex delicto*, to account to the libellant for the use or earnings of the tug.

A decree was entered dismissing the libel, and, the interest of Levy & Co. having been transferred to Baldwin, the latter has appealed to this court.

The Code of Practice of Louisiana (Art. 269) provides for a mandate of the court called a judicial sequestration, " ordering the sheriff, in certain cases, to take into his possession and to

keep a thing of which another person has the possession, until after the decision of a suit, in order that it be delivered to him who shall be adjudged entitled to have the property or possession of that thing." By Art. 271, "all species of property, real or personal," may be sequestered. By Art. 275, a plaintiff in a suit "may obtain a sequestration in all cases where he has a lien or privilege on property." Art. 279 provides for the giving by the defendant of an obligation, with surety, to the sheriff, to set aside the mandate of sequestration, the obligation to be in an amount equal to the value of the property to be left in the possession of the defendant; and also enacts that whenever the defendant shall not execute such obligation within ten days after the seizure of the property by the sheriff, it shall be lawful for the plaintiff "to give similar bond and security to the sheriff as that required by law from the defendant, and to take the property sequestered into his possession."

Articles 280 and 281 are in these words: "Art. 280. The security thus given by the defendant, when the property sequestered consists in movables, shall be responsible that he shall not send away the same out of the jurisdiction of the court; that he shall not make an improper use of them; and that he will faithfully present them, after definite judgment, in case he should be decreed to restore the same to the plaintiff. Art. 281. As regards landed property, this security is given to prevent the defendant, while in possession, from wasting the property, and for the faithful restitution of the fruits that he may have received since the demand, or of their value in the event of his being cast in the suit."

(1.) The proceedings of Neafie & Levy to obtain possession of the tug were strictly in accordance with these provisions of law. They being lawfully in possession and control of the tug, under the order of a court of competent jurisdiction, Black, as their agent, was in lawful possession of her. But he was in possession only as such agent, and no cause of action against him, in favor of Keyser, could arise, either in contract or tort, in respect to any earnings of the tug or any compensation for or value of her use. Whatever claim there could be, could be only against Neafie & Levy.

(2.) The statute seems to make a distinction between movables and landed property, by prescribing in regard to the former that no "improper use" shall be made of them by the party bonding them, thus implying that a proper use may be made of them; and by providing in regard to landed property that the value of its fruits is to be restored. And this distinction is recognized by the Supreme Court of Louisiana; for, in *Segasie* v. *Piernas*, 26 La. Ann. 742, which was a suit against the sureties on a release bond given by the defendant in sequestration, where the question arose whether, in a suit on the bond, the sureties were "liable for the fruits and revenues of movable property sequestered and released on bond," the court, after citing Articles 279, 280, and 281, said: "From these provisions of the law we conclude that the surety on such bond is responsible only for the value of movables, when not delivered according to the stipulations of the bond, after judgment in favor of the plaintiff. It is only where the property is land that the law fixes the responsibility for revenues." There is no good reason why this rule should not equally apply where the plaintiff gives what the statute designates as "similar bond and security to the sheriff as that required by law from the defendant," in order to be able "to take the property sequestered into his possession."

(3.) If the suit were to be regarded as one against Neafie & Levy, to be determined on an accounting with them, it clearly appears that nothing is due to the libellant, when the deficiency in the net proceeds of the sale of the tug to pay the mortgage debt and the other lien and privileged debts is taken into account. This results from the provisions of Art. 2207, *et seq.* of the Louisiana Civil Code, in regard to compensation.

*Decree affirmed.*

MR. JUSTICE BRADLEY, dissenting:

I dissent from the judgment in this case. The defendant, Black, is treated in all respects as if he had lawful possession and use of the steam-tug in question; whereas, in my judgment, his possession and use were entirely without law or

right. He could have no better right than his principals, Neafie & Levy, and they had no right, pending the suit, but that of holding the tug in their possession as a pledge for the payment of their debt. They had a mortgage upon it, and brought a suit to recover the debt due, and, under Article 275 of the Code of Practice, they sued out a sequestration of the tug. The defendant, Keyser, having failed to give a release bond, Neafie & Levy gave such a bond under the act of 1842, and the tug was delivered by the sheriff into their possession. This did not give them any right to use it. A sequestration is in the nature of a deposit, and is so treated in the old law, as well as in the Civil Codes of France and Louisiana. See Code Nap. Liv. III, Tit. XI, Du Dépôt et du Sequestre; Louis. Code, 1808, Book III, Tit. XI, Of Deposit and Sequestration; Code 1825, Book III, Tit. XIII, ditto; Œuvres de Pothier, Tom. VI, Du Contrat de Dépôt. One of the first rules relating to a deposit is, that the depositary cannot use the thing deposited. Rev. Civ. Code, 1870, Art. 2940. A sequestration, if gratuitous, is subject to all the rules which apply to a deposit. Ib. Art. 2975. It is true that the Code of Practice declares that the judicial sequestration "does not mean *a judicial deposit*, because sequestration may exist together with the right of administration, while mere deposit does not admit it." Art. 270. But this right of administration is no more than the right (as well as the duty) of taking due care of the thing, as a prudent father of a family would do, to prevent it from deterioration. Some things would deteriorate without use. A railroad or a plantation would go to destruction. But these cases, and some others, are exceptional. As a general thing, movables are different. Without the owner's consent they cannot lawfully be used for lucrative purposes by the person who has the mere custody of them. When the plaintiff obtains possession, they become in his hands a pledge for the payment of his debt. His lien or mortgage is converted into a pledge; and a pledge does not give the pledgee the right to use the thing pledged. The exceptions are stated by Lord Holt in *Coggs* v. *Bernard*, 2 Ld. Raym. 909, 916, 917, and summarized in Addison on Contracts, 3d Am. Ed., N. Y. 1876, § 1090, where

it is said: "If the pawn be something that will be the worse for wear, as clothes, the pawnee cannot use it; but if it will not be the worse for wear, as jewels, the pawnee may use them; but then it must be at his peril; for, if he is robbed in wearing them, he is answerable. Also, if the pawn be of such a nature that the keeping is a charge to the pawnee, as if it be a cow or horse, the pawnee may milk the cow, or ride the horse; and this is in recompense of the keeping." The rule is derived from the civil law. The Institute says: "Theft is committed not only when one man removes the property of another to appropriate it to himself, but also generally, where one man uses the property of another against the will of the proprietor; thus, if a creditor uses a pledge, or a depositary the deposit left with him, &c." Lib. IV, Tit. I, § VI. Mackeldey says of the pledgee: "He. is liable for every wrong (*culpa*); he dare not use the pledge without special permission, otherwise he is liable for casual damages resulting to it." Roman Law, Book II, Title First, II, 4, § 441, Am. Ed. 1883, (translated from 14th German Ed.).

The right of administration referred to in Art. 270 of the Code of Practice is vested in the sheriff who takes possession under the mandate of sequestration; but he cannot use sequestered movables except to prevent their deterioration. See *Witkowski* v. *Witkouski*, 16 La. Ann. 232; *Owens* v. *Davis*, 15 La. Ann. 22, 25; *Parish* v. *Hozey*, 17 La. 578; *Avart* v. *King*, 14 La. 62. And if he deliver them to the plaintiff, upon receiving the bond prescribed by the act of 1842, the latter obtains no greater right. If the defendant bonds them, as he may do, he may use them, because they are his own property; but even he can make no improper use of them, so as to destroy their value to answer the judgment that may be rendered against him. Article 280 expressly provides that "the security thus given by the defendant, when the property consists in movables, [or in slaves,] shall be responsible that he shall not send away the same out of the jurisdiction of the court; that he shall not make an improper use of them; and that he will faithfully present them after definitive judgment, in case he should be decreed to restore the same to the plaintiff." This

is entirely different from what is said in regard to the plaintiff when he bonds the goods. The only right given him is "to take the property sequestered into his possession." Code Pr. 279; Laws Louisiana, 1842, 204. Possession is all that the plaintiff acquires pending suit. And the reason is very apparent: the movables do not belong to him; he only holds them as a pledge, and the property in them remains in the defendant until they are sold under execution upon the judgment.

There can be no question that a steam-tug is such a movable as may be safely kept without use, or that a pledge of it confers no right of use without a special agreement with the owner.

If this is a correct view of the law, neither Neafie & Levy, nor their agent or lessee, Black, acquired any right to use the steam-tug, but were guilty of tort in using it without Keyser's consent. They became liable to him not only for all benefit and advantage they derived from its use, but for all deterioration and wear and tear occurring by such use. They are to be treated as tort-feasors, and not as lessees under Keyser.

Now, it appears from the findings that Black realized over $14,000 from the use of the tug, either from her actual earnings in towing, or by virtue of the position she occupied, in his name, in the squadron of the Towing Association; whilst his actual expenses, including insurance, coal, commissions, and everything he could count up, amounted only to $4429. Yet Keyser received credit from these disinterested users of his property for only $2600. It seems to me that this one-sided settlement, made by the tort-feasors themselves, ought not to receive the sanction of a court of justice. The plaintiff sues as upon an implied contract, it is true; but that does not prevent his recovering all that, in equity and justice, he ought to recover. I think that the judgment should be reversed, and a new trial directed.