PITTS vs. JAMESON and others, adm'rs, &c.

Where the owner of a patent right transferred to another the exclusive right to make, construct and use, and sell to others to be used, the machine invented, in the state of Ohio, but reserved to himself the right to sell machines of his own manufacture, within the said state; the purchaser agreeing to pay to the vendor ten dollars upon every machine made and sold by him; *Held* that the agreement, although in the nature of a license to manufacture and sell, was more than a mere technical license; that it was a fixed contract right vested in the purchaser, and assignable by him.

*Held also*, that by the terms of the contract the purchaser and his assigns could retain the right so long only as he or they prosecuted the business under it. That whenever the business of making the machines was abandoned or given up, the rights secured by the contract reverted to the vendor. That not until then could the vendor sell to third persons the right to make or vend the machines, within the state of Ohio, without making himself liable to respond to the original purchaser, his personal representatives or assigns, for all the damages sustained by reason of such new license.

*Held further*, that upon the death of the grantee, the contract, and all the rights secured to him by it, went to his personal representatives as assets. But that they could not carry on business under it, any further than was necessary to complete machines begun by the intestate in his lifetime and remaining unfinished at his death.

And it not appearing that the value of the contract, as a chose in action, was diminished by the granting of a new license from the vendor to third persons, to make and sell machines in Ohio, after the death of the purchaser; *held also*, that the only damage sustained by the representatives of the original purchaser, in consequence of such new license, was in the diminished price of the machines completed by them.

*Held further*, that the granting of such new license by the vendor, to other persons, while the representatives of the original purchaser were engaged in finishing machines left incomplete by their intestate, followed by the act of building and vending machines under and by virtue of such license, was not a bar to an action upon the contract, by the vendor, to recover the sums agreed to be paid by the purchaser upon machines manufactured by him; but was available to the defendants by way of recoupment of damages, only.

THIS was an appeal by the defendants from a judgment entered against them, at a special term, upon the verdict of a jury. The action was brought against the defendants as administrators of Horace D. Jameson, deceased. The complaint alleged that on the 20th day of March, 1846, the plaintiff, John

Pitts v. Jameson.

A. Pitts, and the said Horace D. Jameson entered into a certain indented agreement, signed by the said Pitts and Jameson, and sealed with their seals, by which said agreement, after reciting that letters patent had been issued by the United States, bearing date the 29th day of December, 1837, to John A. and Hiram A. Pitts, their heirs, administrators and assigns, by which there was secured to the said John A. and Hiram A., a certain improvement in the machine for threshing and cleaning grain; and further reciting that said Hiram A. Pitts, by his deed of conveyance dated the 20th of April, 1830, and duly recorded, did grant, bargain, sell, assign and transfer, to said John A. Pitts, his heirs, executors, administrators and assigns, the entire interest of said Hiram A. in said letters patent in the state of Ohio; the said John A. Pitts granted, bargained, sold, assigned and transferred to the said Horace D. Jameson, the full and exclusive right to make, construct and use, and sell to others to be used, the improvement aforesaid, commonly called Pitts' patent separators, in and throughout the state of Ohio, reserving, however, to himself, said Pitts, the right to sell separators or machines of his own manufacture, within said state. The plaintiff further alleged that prior to the time of making said contract with Jameson, Pitts had already granted the right to build and use, and sell machines to others to be used, in the county of Richland, in the state of Ohio, to one John Preston, and that said Jameson did, at the same time with the execution of said indenture, execute under his hand and seal, a release of the said county from the operation of the said indenture, to the said John A. Pitts, and covenant and agree with Pitts, that he, said Jameson, would not sell any of said machines to be used in the county of Richland, without the consent of said John A. Preston, or said John A. Pitts, first had and obtained, to be expressed in writing. That Jameson did, in and by said indenture, covenant and agree with the said John A. Pitts, that he would pay him, said Pitts, the sum of ten dollars upon each and every machine and separator mentioned and specified in said indenture, that he, said Jameson, should make and use, or make and sell to be used in the state

of Ohio; and that he, Jameson, would make out and deliver to said Pitts in each and every year, a written statement of the number of machines so made and used, or made and sold to others to be used. The plaintiff further alleged that after the making of said indenture, the said Jameson, in his lifetime, made a large number of the machines mentioned and specified in said indenture, and used the same, or sold the same to others to be used in the state of Ohio, to wit, one hundred machines, whereby he became liable to pay the plaintiff therefor, the sum of one thousand dollars. That said Jameson died on the 17th day of October, 1847, intestate, and that the defendants were duly appointed administratrix and administrator of the said Horace D. Jameson, deceased, by the surrogate of the county of Monroe, on the 22d day of November, 1847. That at the time when said Jameson died, he had on hand a large number, to wit, one hundred of the machines or separators mentioned in said agreement, partially completed, and in various stages of completion, which said machines were, after the death of said Jameson, completed by the administratrix and administrator of said Horace D. Jameson, and sold by them to be used in the state of Ohio. Whereby and by reason of the premises, the said administratrix and administrator became, and were liable to pay the plaintiff the sum of ten dollars on each of the said last mentioned machines as a premium thereon. Wherefore the plaintiff demanded judgment against the defendants, for the sum of two thousand dollars, and costs.

The defendants put in an answer, denying the material allegations in the complaint, and alleging that the plaintiff had been paid large sums of money by the defendants, which they would apply upon any demand of the plaintiff which he should establish herein; and that the plaintiff was indebted to the said Horace D. Jameson, at the time of his death, in the sum of one thousand dollars, for money before that time had and received by the plaintiff to the use of said Jameson. Also that the plaintiff was indebted to the defendants in the sum of one thousand dollars, for money had and received by him to their use before the commencement of this suit, which they would set off against any

Pitts *v.* Jameson.

demand of the plaintiff established herein. And the defendants further alleged that the said Jameson did not enjoy the full and exclusive right to make, construct and use, and to sell to others to be used, the said patent right or improvement in the complaint mentioned, in the territory in said complaint and in said contract also mentioned; but on the contrary, the plaintiff, before and after the death of Jameson, made, used and sold to others to use, and authorized others to make, contract and sell, in the territory in said complaint mentioned, the said improvement or patent right, to the great damage and disadvantage of the said Jameson and the defendants, and by putting into market, in the territory aforesaid, large numbers of said machines by the said plaintiff and others, by his consent, sanction, procurement and license, the price of said machines was very greatly depreciated, to wit, forty dollars on each machine, and the defendants had thereby suffered and sustained damage to the amount of five hundred dollars; and that the plaintiff failed to keep and perform the said contract on his part to be kept and performed, but wholly failed so to do, and made large numbers of said machines, and caused others to make and vend large numbers of said machines, in the said territory, to the great damage of the defendants, to wit, five hundred dollars.

The material allegations in the answer were put in issue by the reply. On the trial, the plaintiff proved the execution of the agreement. It was also proved that at the time Horace D. Jameson died he was carrying on the business of manufacturing threshing machines, called and known as Pitts' separator, and also a horse-power for propelling the same, called Carry's horse-power; this business he carried on in the town of Massillon, county of Stark and state of Ohio, and for about a year and a half before he died. His business was closed up at that place after his death by two men. That the number of machines called by the name of Pitts' patent separators, made and begun to be made by Jameson in his lifetime, was one hundred and thirty; of this number there was sold during his lifetime sixty-five, the balance were sold by the agents of his administrators after his death. It further appeared that after the making of

the agreement between the plaintiff and Jameson, the plaintiff gave permission to C. M. Russell & Co. to manufacture the patent separators, and that they in pursuance of such authority, made and sold the said machines, at Massillon, in the year 1848. And there was some evidence to show that in consequence of the competition thus ensuing Jameson's administrators sold a smaller number of the machines than they would otherwise have done, and at reduced prices.

The court charged and instructed the jury, that the said indented agreement between the plaintiff and Horace D. Jameson and the supplement thereto, bearing date on the 20th day of March, 1846, continued after the death of said Horace D. Jameson, for at least a reasonable time to allow the finishing and vending of the machines which were partly built at the time of the death of the said Horace D. Jameson, and for the machines so finished and sold the defendants were liable to pay the plaintiff the sum of ten dollars each. To each and every part of which said charge, the counsel for the defendants excepted. The counsel for the defendants requested the court to instruct the jury, that the authority given by the plaintiff to C. M. Russell & Co., to build and vend, followed by their act of building and vending machines at Massillon, aforesaid, while the defendants were finishing and vending said machines there in the season of 1848, and during such reasonable time as was proper for finishing and vending the unfinished machines left there by H. D. Jameson at his death, was a bar to any recovery by the plaintiff for the machines so finished and sold by the defendants or either of them during that time. The court refused so to instruct or charge the jury, but charged that whatever loss was sustained by the defendants in the price of machines so sold by them, in consequence of the making and vending of other machines by the authority of the plaintiff during that time, should be allowed to the defendants by way of recoupment, and to that extent only was it proper for the jury to make the defendants any allowance for the machines proved to have been made and sold by C. M. Russell & Co. To which refusal, and to the charge so given, and each and every part thereof, the counsel for

the defendants also excepted. The judge, among other things, stated to the jury that it was not claimed on the part of the defendants, that it was contemplated to continue the business beyond finishing up and selling the unfinished machines. The jury found a verdict for the plaintiff.

*Benedict & Martindale*, for the appellants.

*W. F. Cogswell*, for the respondent.

*By the Court*, JOHNSON, J. The contract entered into between the plaintiff and Horace D. Jameson the intestate, on the 20th of March, 1846, did not operate as an assignment or transfer to the latter of the right and title secured by the letters patent, to the invention, within the territorial limits of the state of Ohio. It was a mere agreement, which secured to the intestate the exclusive right to make and use, and to sell to others for use, the machine invented, within that state, except such as the plaintiff, who still retained the title or ownership of the right, might choose to make and sell himself, which right he reserved in the agreement. In *Gayler* v. *Wilder*, (10 *Howard*, 477,) it was held that an agreement by which the owner of a patent right transferred to another the exclusive right to make and vend the article invented, in a certain territory, but reserved to himself the right to make and vend also, within certain limits and upon certain terms, and the other party agreed to pay a certain stipulated price for each article made and sold, was only a license to manufacture and sell, although in terms it appeared to be an absolute sale or assignment of the right within the specified territory.

The agreement in this case, although in the nature of a license, is more than a mere technical license. It is a contract, founded upon a sufficient consideration, by which a right is secured, not revocable at the pleasure of the grantor, and not a mere personal trust, but a fixed contract right, vested in the grantee and assignable by him. It was however a chose in action, not in possession, there being no transfer of title. But by the terms of

the contract the intestate and his assigns could retain the right so long only as he or they prosecuted the business under it.

Whenever the business of making the machines was abandoned or given up, the rights secured by the contract reverted to the plaintiff. Then, and not till then, could the plaintiff sell to third persons the right to make or vend the machines within the said state, without making himself liable to respond to Horace D. Jameson, his personal representatives or assigns, for all the damages sustained by reason of such new license. The reservation in the contract was to the plaintiff himself, only; a mere personal privilege, not transferable to third persons. Upon the death of H. D. Jameson, this contract, and all the rights secured to him by it, went to the defendants as assets. But they as administrators could not carry on business under it, any farther at most than was necessary to complete machines begun by the intestate in his lifetime and remaining unfinished at his death. To that extent, and for that purpose, they might lawfully, as they did, use the materials provided by the intestate in his lifetime under the contract, and thus preserve the right to the estate, and prevent its reversion to the plaintiff. (*Story on Cont.* § 287. *Siboni* v. *Kirkenam*, 1 *M. & W.* 418. 2 *Id.* 190.) But beyond this they could do nothing. They held the right in trust merely, to convert into money if necessary to the settlement of the estate, and if not, to distribute with the surplus of the personal estate, according to the statute. They had no right as administrators to carry on the general business of making machines under the contract. They might have sold and transferred the right, in order to raise funds to pay debts, and the purchaser would have acquired all the rights, as I think, secured to Horace D. Jameson in his lifetime, had the business of making machines been carried on without suspension. But it was not shown or pretended, upon the trial or upon the argument, that the defendants ever wished or endeavored to dispose of the contract for the purpose of settling the estate, or that they or any one, who was, or might be, entitled to it in the way of distribution, contemplated carrying on the business under it of making machines. There is nothing to show that the value of the con-

Pitts *v.* Jameson.

tract as a chose in action was in the least diminished by the license from the plaintiff to C. M. Russell & Co. or others to make and sell machines in Ohio. Hence it follows that the only damage sustained by the defendants was in the diminished price of the machines completed by them, caused by the new license, and this the judge instructed the jury to allow.

The learned judge was, I think, clearly right in refusing to charge the jury as requested by the defendant's counsel, that the authority given by the plaintiff to C. M. Russell & Co. to build and vend machines at Massillon, while the defendants were engaged in finishing the machines left by the intestate, followed by their act of building and vending, was a bar to the action. The defendants, while engaged in finishing up the machines within the scope of their power, as administrators, were acting under the rights conferred by the contract, and in pursuance of it as a valid subsisting contract, and of course are bound to respond according to its terms for each machine so completed under it. If the plaintiff in the mean time violated any of the provisions of the contract, either express or implied, such violation was available to the defendants by way of recoupment of damages only, not in bar of the action.

As long as a party to a contract elects to keep it on foot, and goes on under it as a valid subsisting contract, and does not avail himself of a breach by the other party to rescind and put an end to it, so long he is bound by it, and an action may be maintained against him upon it, and he can only set up a breach by the other party, by way of recoupment.

I am of opinion that the charge of the judge was unexceptionable in all respects, at least as against the defendants.

New trial denied.

[CAYUGA GENERAL TERM, June 6, 1853. *Selden, T. R. Strong* and *Johnson,* Justices.]