NELLIS *v.* PENNOCK MANUF'G CO.*

(*Circuit Court, E. D. Pennsylvania.* August 1, 1882.)

1. PATENT—INCLUSION OF SEVERAL PATENTS IN SAME SUIT.

Claims for infringement of several patents may be included in one suit where the subjects of the patents are correlative, and all the inventions covered by them are embodied in the same infringing machine.

2. SAME—ASSIGNMENT—RIGHT OF ASSIGNEE TO SUE IN HIS OWN NAME.

An assignment of " the exclusive right to manufacture and sell my invention in the United States to the full end of the term for which said letters were

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

granted," vests in the assignee the entire monopoly in the patent throughout the United States, and he may bring an action in his own name for an infringement.

3. SAME—LICENSE—PARTIES TO SUIT.

The grant by such assignee to a third person of the exclusive right to manufacture and sell a particular machine containing improvements covered by the patent is only a license, and the licensee is not a necessary party to the suit for infringement.

4. SAME—VALIDITY OF PATENT.

Reissued patents Nos. 2,429, for improvement in hay elevators, and 2,260, for improvement in horse hay forks, and original patent No. 53,345, for improvement in horse hay forks, held valid.

Bill in Equity for an injunction against the infringement of certain patents. The facts are sufficiently stated in the opinion.

*Bakewell & Kerr*, for complainant.

*Henry Baldwin, Jr.*, for respondents.

McKENNAN, C. J. On the eighteenth day of December, 1866, letters patent No. 2,429, for "improvement in hay elevators," were reissued to Edward L. Walker; on the twenty-ninth of May, 1866, reissued letters patent for "improvement in horse hay forks" were granted to Seymour Rogers, No. 2,260; and on the twentieth of March, 1866, letters patent No. 53,345, for "improvement in horse hay forks," were granted to Seymour Rogers. The title to these several patents is alleged to be vested in the complainant, and they constitute the subjects of the present controversy. The bill alleges that the inventions described and claimed in these several patents "are susceptible of connected use in practical operation in the construction of horse hay forks," and that they are embodied and contained in hay forks manufactured, used, and sold by said respondent, in violation of the exclusive rights of complainant. With this averment in the bill, it is not demurrable for multifariousness.

The inclusion of several patents in the same suit, where their subjects are correlative, and the inventions claimed are embodied in the same infringing machine, has been more than once sanctioned by the highest authority. *Nourse* v. *Allen*, 3 Fish. 65; *Seymour* v. *Osborne*, 11 Wall. 516, 559; *Bates* v. *Coe*, 15 O. G. 342.

In *Seymour* v. *Osborne* Mr. Justice Clifford says "that as all the patents sued upon refer to the same general subject, and are all embodied in the machines manufactured by the defendant, the objection, if it had been made, could not have been sustained." The demurrer for this cause is therefore overruled.

The complainant's title to the patents in question is denied in the answer, and it is insisted that the proofs do not establish his right

to maintain this suit.    Patents No. 2,260 and 53,345 seem to have been regularly assigned to the complainant, in terms which vest in him the entire interest in these patents, and therefore his right to sue on them is unquestionable; but Walker's assignment of his original letters, which were succeeded by reissue 2,429, is claimed to be so restricted as to constitute the complainant only a licensee, and so to disable him from suing in his own name.    That assignment is dated February 20, 1865, and, after reciting the grant to Edward L. Walker of letters patent No. 44,129, assigns to "D. B. Rogers & Sons, of Pittsburgh, Pa., and their legal representatives, the exclusive right to manufacture and sell my invention in the United States to the full end of the term for which said letters were granted," and is duly executed by Walker, and recorded in the patent-office.

There can be no doubt that this conveyed to the assignees the entire right to manufacture and sell the invention throughout the United States, to the exclusion of the patentee as well as all others. They were invested with the monopoly of manufacture and sale, and, so far as these two incidents of the franchise are involved, nothing whatever remained in the patentee.    What interest, then, had he upon which he could maintain a suit for a violation of either of these rights?    And why could not the party who alone is entitled to protection, invoke directly the powers of a court of equity for that purpose?    Even in an action at law, in which the plaintiff must be invested with the legal title to the patent, it was held by Mr. Justice Story that "where a grant was made of a right to construct and use 50 machines within certain localities, reserving to the grantor the right to construct, and to license others to construct, but not to use them therein, the grant was of an exclusive right, under the act of 1836, in regard to patents, and that suits were to be brought in the name of the assignees;" the judge saying: "The action for the violation of an exclusive right is confined to the owner of such right." *Washburn* v. *Gould*, 3 Story, 122.    But if this is not so, I think the entire monopoly in the patent is vested in the complainant.    He has the exclusive right to manufacture and sell; and this carries with it the right to use the machines sold.    To the extent to which the patentee transferred the right to make and sell his invention, he parted with the monopoly of its use, and authorized its use by those who had become lawful purchasers of it.    But he had parted with his entire right to manufacture and sell, so that, necessarily, he could not sell to others to use, and no part of the monopoly remained in him.    The complainant alone has the right to sell, and as it would

practically be nugatory without the right to use the machines sold, all that is essential to its full exercise and enjoyment must be taken to have been intended by the parties to pass with it; and nothing short of an express qualification will change this result. See *Bloomer* v. *Millinger*, 1 Wall. 340.

Such was the practical construction put upon the instrument by the parties to it. After the reissue of the original patent, to which the assignment referred to applied, to-wit, on the twenty-sixth of January, 1867, another assignment to D. B. Rogers & Sons was executed by Walker, in which the following is the granting clause:

"And do confirm to them and their legal representatives, without further fee or payment, and without liability to forfeiture, all and every right to manufacture, sell, and use, and vend to others the right to manufacture, sell, and use, hay elevators under the aforesaid letters patent, and pursuant to the aforesaid assignments, dated the twentieth day of February, A. D. 1865, as fully and entirely to all intents and purposes as if the said agreement of the same date had not been made and executed; together with the same rights, powers, and privileges in the said invention and improvements, under the reissue of the said letters patent, that has been or may be obtained."

It is true that the technical import of this instrument is to release Rogers & Sons from liability assumed by them by an agreement of even date with the original assignment, and to nullify the effect of that agreement upon the rights conveyed by the assignment; but it cannot be conceived that the assignor would "confirm" to his assignees the right "to use, and to vend to others to use," his invention, if he had not intended, and did not intend, to part with it, and unless it was understood and believed that a transfer of such right was comprehended by the previous assignment.

In addition to the "confirmation" of the rights to "manufacture, sell, and use, and vend to others to use," the invention, these "same rights" in the invention, under the reissue then obtained, or to be obtained, are also conveyed. So that in every aspect of the question it seems to me that these instruments are to be taken as intended by the parties to vest in the assignees the entire interest of the assignor in the patent. And when the parties have so expounded their contracts, it is out of place for an entire stranger to them to seek to circumscribe their scope by a technical limitation of the spirit and sense which the parties have impressed upon them.

It is further alleged that Wheeler, Melick & Co. have such an interest in one of the patents in controversy that they are necessary parties to any suit founded upon it. On the twenty-eighth day of

June, 1867, D. B. Rogers & Sons, then owning the Walker patent, made an agreement with Wheeler, Melick & Co., by which they granted to the latter "the exclusive right under said recited letters patent to manufacture and sell a certain hay elevator, which has a movable point, which also serves as and performs the functions of prongs or barbs to sustain the hay." This is not an assignment of an exclusive interest in the entire monopoly for the whole or any portion of the United States. It is a license only to manufacture and sell exclusively a specified form of hay elevator, covered by the Walker patent, the beneficial ownership of it as to all other form of hay forks, and the legal title to it, remaining in D. B. Rogers & Sons. It is in terms defined as a license in this agreement, and its character as such is conclusively apparent from other agreements between the same parties, which have been made part of the evidence. Under all the decisions, the representatives of such an interest are not indispensable parties to a suit upon the patent. Nor are they even proper parties here, because the decree asked for will not affect their interests, and they have, since the commencement of this suit, released to the complainants all rights and interest which they might have under the patents in suit.

I do not propose to assume the labor of discussing in detail the various defenses set up by the respondent. This opinion is sufficiently extended. It is only necessary to say that these defenses, and the argument in enforcement of them, have failed to convince me that the complainant ought not to have the relief which he seeks.

I am of opinion (1) that reissued patents Nos. 2,429 and 2,260, and original patent No. 53,345, are valid, and that they have been severally duly assigned to the complainant; (2) that the respondent, in the hay elevator exhibited in evidence and manufactured and sold by it, is shown to have infringed the first claim of No. 2,429, the first and second claims of No. 2,260, and the claim of 53,345.

A decree will accordingly be entered in favor of the complainant, with costs, and for a reference to a master to ascertain damages and profits.