JOHNSON RAILROAD SIGNAL CO. v. UNION SWITCH & SIGNAL CO.

(Circuit Court, W. D. Pennsylvania. October 2, 1893.)

No. 13.

1. PRINCIPAL AND AGENT—POWERS OF AGENT—PATENT RIGHTS.
A power of attorney which, in consideration of a prescribed royalty, appoints the donee sole agent in the United States "for the purpose of working and developing the business of said patents," with power to "negotiate the sale of the said patents upon terms to be agreed upon," creates a mere agency, not coupled with an interest, and gives the agent no right to convey or assign the patents without the assent of his principal.

2. PATENTS—ASSIGNMENT.
A contract which purports to convey, for a prescribed royalty, the sole and exclusive right and license to make, use, and sell in the United States the improvements covered by a patent for the full term thereof, is in substance an absolute assignment, and nothing remains in the assignor.

3. SAME—POWER OF ATTORNEY.
An assignment of a patent by an attorney in fact does not bind the principal unless executed in his name and under his seal, and is ineffective if it runs in the attorney's name and seal. Machesney v. Brown, 29 Fed. 145, followed.

In Equity. Bill by the Johnson Railroad Signal Company against the Union Switch & Signal Company, for infringement of letters patent No. 241,246, issued to Frederick Cheeswright. Cheeswright, by a power of attorney, the provisions of which are set out in the

opinion, constituted one Yeomans his attorney in fact in the matter of the patent, and defendant claims under a conveyance by Yeomans, dated March 21, 1882. Plaintiff claims title to the same patent under a power of attorney from Cheeswright to Henry Bezer, dated October 31, 1889, and an absolute assignment of the patent from the latter. The case was heretofore heard on motion for leave to file a cross bill, and for an order for substituted service. 43 Fed. 331. Afterwards, a motion by the cross complainant for an injunction was denied. 51 Fed. 85. Decree is now rendered for complainant.

George W. Miller and William R. Blair, for complainant.
George H. Christy and S. Schoyer, Jr., for defendant.

Before ACHESON, Circuit Judge, and BUFFINGTON, District Judge.

ACHESON, Circuit Judge. The new proofs fail to show that Cheeswright assented to or ratified the instrument of March 21, 1882, or that he acquiesced therein after knowledge. The burden of proof is here upon the defendant in the original bill, the Union Switch & Signal Company. As between Yeomans and Cheeswright, it is oath against oath. There are, however, circumstances in the case which greatly discredit Yeomans. Then the correspondence, as a whole, sustains Cheeswright. We are altogether convinced that he was not fully informed as to the nature of the arrangement between Yeomans and the defendant. This, we think, is demonstrable from the letters. That he was not furnished with a copy of the writing of March 21, 1882, or advised of its contents, he swears positively. We are satisfied that he speaks the truth. In our judgment, the clear weight of the evidence is with the plaintiff, the Johnson Railroad Signal Company.

Upon the question of title, then, the case depends—as it did when before the court on the motion for an injunction, (51 Fed. 85)—upon the papers under which the respective parties claim ownership of the letters patent, the subject-matter of this suit. The question has been reargued, and it has been again carefully considered. By the written instrument of September 10, 1881, executed under the hand and seal of Cheeswright, the latter appointed Yeomans his "sole agent" for the United States "for the purpose of working and developing the business of the said patents in those parts, for and in consideration of a payment to be well and truly made by the said D. M. Yeomans to me, the said Frederick Cheeswright, my heirs, executors, administrators, and assigns, as royalty, of four pounds per lever, British money, for every lever fitted upon any railway in the United States, to which Sykes' system of signaling may be attached or connected, with power for the said D. M. Yeomans to negotiate the sale of the said patents upon terms to be agreed upon."

It will be perceived that this instrument contains no words of conveyance or assignment. It grants to Yeomans no interest whatsoever in the patents. It simply confers an authority upon him to

act as agent for Cheeswright for the purpose specified. Sewing-Machine Co. v. Ewing, 141 U. S. 627, 12 Sup. Ct. 94. The power concerns the interest of the principal alone. It is very clear upon the authorities that it was not a power coupled with an interest. Hunt v. Rousmanier, 8 Wheat. 174; State v. Walker, 125 U. S. 339, 8 Sup. Ct. 929; Hartley's Appeal, 53 Pa. St. 212; Blackstone v. Buttermore, Id. 266. Yeomans did not bind himself to act for any certain period. He was free to terminate his relation with Cheeswright, and the latter had the like right. Sewing-Machine Co. v. Ewing, supra; Coffin v. Landis, 46 Pa. St. 426. The agency was a personal one. The power was to Yeomans alone, not to his assigns. Cheeswright placed his trust in Yeomans individually. The agency, therefore, was not transferable. Whart. Ag. § 28. The power of attorney (for this, and nothing else, it was) contemplated two things: First, "the working and developing the business of the said patents;" second, the negotiation of the sale of the patents "upon terms to be agreed upon." At the argument it was conceded by the counsel for the defendant, the Union Switch & Signal Company, that, under the clause, "with power for the said D. M. Yeomans to negotiate the sale of the said patents upon terms to be agreed upon," Yeomans could not consummate a sale of the patents without Cheeswright's approval of the terms of the sale. This must be the correct construction; otherwise, the words "upon terms to be agreed upon" would be without force and useless, for a sale to be made by Yeomans would imply, and necessarily involve, an agreement as to terms as between him and the other party to the contract. Yeomans could "negotiate" a sale, but the terms were to be accepted by Cheeswright before it became a binding contract. This, we think, is the clear, and, indeed, is the agreed, meaning of the clause.

Now, such being the character of the power of attorney which Yeomans held, he executed under his hand and seal, in his own name, and solely as his own act and deed, the instrument of March 21, 1882. This paper, after reciting that by an instrument in writing executed by Cheeswright, September 10, 1881, Yeomans "is appointed sole agent for the United States of America, for the purpose of working and developing the said patents in those parts, for and in consideration of a royalty therein named," and that the Union Switch & Signal Company "is desirous of acquiring the sole and exclusive right and license of making, using, and selling in the United States the said patented inventions," proceeds thus:

"Now, in carrying out and accomplishing the purposes of the said agency, the said D. M. Yeomans, for and in consideration of one dollar to him in hand paid, and of royalties to be paid as hereinafter set forth, has given and granted, and does hereby give and grant, to the said the Union Switch and Signal Company, its successors and assigns, the sole and exclusive right and license, under said recited patents, to make, use, and sell the improvements therein described and claimed, or intended so to be, to the full ends of the respective terms of said patents: provided that and by the acceptance hereof the said licensee agrees that he will well and truly pay to the said Yeomans, quarterly, during said respective terms, and to his heirs, executors, administrators, and assigns, as royalty, four pounds per lever, British money, for every lever fitted by it upon any railway in the United States, to which

Sykes' system of signaling may be attached. Witness the hand and seal of the said D. M. Yeomans this 21st day of March, 1882.

"D. M. Yeomans.  [Seal.]"

Was this an authorized and valid instrument, as against Chees-wright, under the powers he had conferred upon Yeomans?  The paper, it will be observed, purports to grant to the corporation, its successors and assigns, the sole and exclusive right and license under the patents to make, use, and sell the improvements therein described and claimed, to the full ends of the respective terms of the patents.  What was this but a sale of the patents?  Section 4884, Rev. St. U. S., provides:

"Every patent shall contain * * * a grant to the patentee, his heirs or assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery throughout the United States, and the territories thereof."

Manifestly, Yeomans' grant to the Union Switch & Signal Company was as comprehensive as the grant by the United States to Cheeswright.  It was a transfer of the entire patents.  Waterman v. Mackenzie, 138 U. S. 252, 255, 11 Sup. Ct. 334.  If it could be said that the grant here was not a sale of the patents technically, it certainly was a sale in substance and effect.  A grant by the owner of a patent to a corporation, its successors and assigns, of the sole and exclusive right and license to make, use, and sell the patented improvement during the term of the patent, vests the entire invention and monopoly in the alienee.  Nellis v. Manufacturing Co., 13 Fed. 451; Pickhardt v. Packard, 22 Fed. 530, 532; Rob. Pat. § 763.  Under such an assignment, absolutely nothing remains in the assignor.  Such assignee is substituted for the original patentee, and is invested with all his rights.  Id. § 762; Rev. St. §§ 4898, 4916, 4917, 4919.  But, as we have seen, Yeomans was not authorized to sell the patents without the concurrence of his principal, and there was no such concurrence.  As an attempted sale, then, the instrument was inoperative and void.

The defendant, however, denying that the transaction of March 21, 1882, was a sale of the patents, contends that it was a method of "working and developing the business of the said patents," within the scope of the first clause of the power of attorney.  Is there any fair ground upon which this proposition can be defended?  The language, "working and developing the business of the said patents," it may be conceded, is somewhat indefinite, and involved the exercise by Yeomans of reasonable discretion.  Doubtless, he might have granted a special license to each railway company which adopted Sykes' system, and also ordinary shop rights to manufacturers.  We need not now define the precise limits of his authority under this first clause.  Obviously, it did not extend to a sale of the patents, for that was provided for in the second clause; and we think it may be confidently affirmed that the first clause did not authorize that which was substantially a sale, even if not technically and nominally so.

Now the "working and developing the business of the said patents" was the declared purpose for which Yeomans was appointed

the "sole agent" of Cheeswright, and the business, it is to be noted, was to be conducted by Yeomans as such agent. But the instrument in question undertook to terminate Yeomans' agency, and to transfer to a stranger to Cheeswright the exclusive right to operate the patents; not, however, as the agent or in the interest of Cheeswright, but at the pleasure and for the benefit of the alienee. This was something far more objectionable than a mere transfer of his agency, which, as we have seen, was beyond the power of Yeomans. Moreover, the agency of Yeomans was determinable at the will of Cheeswright; but Yeomans essayed to invest his grantee with the irrevocable right to practice the invention to the exclusion of everybody else, even the owner of the patents. Then, again, the paper did not bind the grantee to do anything. In the interest of rival safety appliances, the Union Switch & Signal Company was at liberty to suppress the Sykes invention altogether. The company was not bound to fit a single lever. In fine, under color of his agency to work and develop the business of the patents, (which agency did not authorize a sale,) Yeomans undertook to dispose of the whole beneficial interest in the patents by an exclusive and irrevocable grant to the Union Switch & Signal Company, without compensation to Cheeswright, or any reservation whatsoever to him, and without even a stipulation by the grantee that it would work and develop the business of the patents, or use the invention at all. Manifestly, Yeomans' grant, instead of being in the line of his agency, frustrated it, and defeated the clearly expressed intention of his principal. We have only to add that there is no testimony to show that what Yeomans did was an ordinary or commercially approved method of working and developing the business of the patent. It is, we think, quite impossible to sustain the act of Yeomans as a fair exercise of his authority.

There is still another objection to the instrument of March 21, 1882, which, under authorities, seems to be equally fatal. It does not purport to be the act and deed of Cheeswright, but of Yeomans alone. For a recited nominal consideration paid to him in hand, and a contingent quarterly royalty to be paid to him, and to his heirs, executors, administrators, and assigns, Yeomans personally made the grant. Plainly, upon the face of the paper, the transaction was between Yeomans individually and the Union Switch & Signal Company; and, if we are at liberty to look at the parol evidence dehors the writing, we discover that Yeomans did not regard himself as acting as agent for Cheeswright in what he did, or intend so to act. His surprising statement, when on the stand as a witness for the defendant, was this:

"I did not consider myself the agent of Frederick Cheeswright to the extent of my conveyance to the Union Switch and Signal Company. I only conveyed to them the rights and interests I had purchased in the patents."

It is, however, shown that he had no right, title, or interest whatever in the patents, by purchase or otherwise. In Machesney v. Brown, 29 Fed. 145, Judge Wallace held that the assignment of a patent for an invention, when executed by one acting as attorney, by an instrument under seal, must be executed in the name

of the principal, and purport to be sealed with his seal, in order to bind the principal, although in the preamble to the deed of assignment the power of attorney was recited. There was a like ruling with respect to the grant of a license to use a patent in Pryor v. Coulter, 1 Bailey, 517. Undoubtedly, the general rule is that, to bind the principal, an instrument under seal must be in his name. Whart. Ag. § 283; Story, Ag. §§ 147, 148; Clarke v. Courtney, 5 Pet. 319, 349; Elwell v. Shaw, 16 Mass. 42; Kiersted v. Railroad Co.. 69 N. Y. 343; Heffernan v. Addams, 7 Watts, 116; Strobecker v. Bank, 8 Watts, 188, 190; Bassett v. Hawk, 114 Pa. St. 502, 504, 8 Atl. 18. There is no equitable reason for taking this case out of the operation of the rule. Cheeswright has never received a farthing under the assignment of March 21, 1882; but Yeomans, it appears, was paid by the defendant a large money consideration upon his execution of the papers,—a fact which was concealed from Cheeswright. Moreover, the paper was not drawn so as to protect the rights of Cheeswright, or to secure him anything. In very truth, it completely ignored him and his interests.

Upon the whole case, we are of the opinion that the instrument executed by Yeomans on March 21, 1882, was not binding upon his principal. That paper being out of the way, the title of the plaintiff to the letters patent in suit is complete, and, as there is evidence of infringement and threatened infringement by the defendant, the plaintiff is entitled to a decree for an injunction and an account. We have had some difficulty in determining how far back the accounting should go. Our conclusion is that, in its dealings with Yeomans, bad faith to Cheeswright is not imputable to the defendant company. Then, Cheeswright did know that some business relation existed between Yeomans and the defendant with reference to the working of the patented invention. He supposed that the defendant was manufacturing and fitting signals for Yeomans under his agency, and with this he seems to have been content. We think, then, that it would be doing substantial justice to commence the accounting at the date when Yeomans' power of attorney was revoked by Cheeswright by his appointment of Henry Bezer as his attorney in fact.

Let a decree be drawn in accordance with the foregoing views.

BUFFINGTON, District Judge, concurs.