HURD v. GERE et al.

(Supreme Court, Appellate Division, Third Department. March 2, 1898.)

1. PATENTS—LICENSE.

A contract relating to a wagon patent, in which one party authorizes the other to "manufacture and sell" only, and the other agrees to pay $2.50 on each and every wagon, and to push the sale thereof, and no right to manufacture and sell is given to manufacturer's assigns, is not an assignment of the patent, but a mere license.

2. SAME—LIABILITY FOR ROYALTIES.

A licensee of a patent is liable for royalties agreed to be paid, unless the patent is legally revoked or annulled, or unless while he manufactures the same he renounces the patent, refuses to act under the license, and gives licensor notice thereof.

3. SAME—CONSTRUCTION OF CONTRACT.

Where a license of a patent provides that, should it be shown that the patents were invalid, or did not cover the devices used by licensee, the contract should be void, renders the contract valid until such election is made, on the invalidity being shown.

4. SAME—WAIVER OF RIGHT TO RESCIND.

A licensee of a patent under a clause in the contract permitting him to declare the contract void when the patents are shown invalid, may, when the patents have not been legally declared invalid, waive such right, and rely upon a guaranty of the patentee to protect him from damages for infringement.

5. SAME—NOTICE OF ELECTION.

A licensor of a patent is entitled to assume that his licensee remains such until the latter, by a definite notice, notifies him of his election to rescind the contract.

6. SAME—SUFFICIENCY.

Licensees of a wagon patent notified licensors that they found that a patent was previously issued on a device such as they were then using. In subsequent letters statements were made that the falling off of the number of wagons reported is due to the fact that many wagons furnished "to our trade have been built on a plan not covered by the patents in which you are interested. * * * With this we return our copy of patent. We are advised by what we consider good authority that we do not infringe on claim in patent sent herewith." And in subsequent letters licensors are credited with royalties, and check sent for the same. *Held* not a notice showing intent to rescind the contract of license.

Appeal from judgment on report of referee.

Action by Lorenzo D. Hurd against Theodore D. Gere and others. Judgment for plaintiff. Defendants appeal. Affirmed.

The controversy in this action arose out of a contract, of which the following is a copy:

"This agreement, made this 24th day of December, A. D. 1884, between L. D. Hurd, of Wellsville, N. Y., and J. C. Sampson, of Elmira, N. Y., of the first part, and Gere, Truman, Platt & Co., of Owego, N. Y., of the second part, witnesseth: That, whereas, letters patent of the United States were granted the parties of the first part June 24, 1879 (No. 216,854), and August 21, 1883 (No. 283,712), for alleged new and useful improvements in wagons; and whereas, the parties of the second part are desirous of manufacturing and vending lumber and farm wagons containing said patented inventions and improvements: Now, therefore, the parties have agreed as follows: (1) The parties of the first part hereby license, authorize, and empower the parties of the second part to manufacture and sell, at any and all places in the United States, for the full term for which said letters patent were granted or do extend, lumber and farm wagons containing any and all improvements granted to the said parties of the first part in said letters patent, or that may hereafter be granted to one or to both of them by letters patent upon any improvement or new specification for a farm or lumber wagon; and the parties of the first part further agree that the parties of the second part shall have the sole and exclusive right to manufacture and sell said wagons in the United States. It is, however, mutually agreed that in case parties of the first part desire to contract with other parties for the manufacture and sale of said wagons in the following territories, viz. [all states and territories west of the Mississippi river; also, the states of Illinois and Wisconsin], they are at liberty to revoke and recall the privileges under the terms of this contract, in the last above mentioned territory, and a three-months notice shall be sufficient to cause parties of the second part to discontinue sales in said territory. The parties of the second part agree to pay to the parties of the first part the sum of two dollars and fifty cents as royalty, or license fee, on each and every such wagon manufactured and sold by them during the term that such patents continue. It is mutually agreed, however, that if, after December 31st, 1885, parties of the second part manufacture and report fifteen hundred or more of these wagons per year, a reduction of fifty cents will be allowed by the parties of the first part on each and every wagon so reported. The parties of the second part agree to make full and true returns to the parties of the first part, under oath if desired, upon the first of January of each year, and at the end of every three months succeeding, of all wagons containing said patents and improvements made and sold by them, and at the time of such reports to pay to the parties of the first part all amounts due them for such royalty, or license fee, on all such wagons as have at the time been sold by them. It is especially understood and agreed, however, that after December 31st, 1885, only two dollars per wagon shall be advanced at the quarterly payments, but at the end of each year settlements shall be made in full in accordance with the terms stated above. The parties of the first part agree that if said invention or improvements as now set forth and exhibited and described in the specifications or letters patent, or those set forth in letters patent now applied for, shall hereafter prove to be infringements on any other invention or patent, issued to any other person or persons, parties of the first part agree to indemnify parties of the second part against any loss they may sustain by using any of the devices mentioned in said patents which shall prove to be infringements of patented rights of others. It is further mutually agreed that in the event of its being shown that the patents herein referred to are not valid, or do not cover the features or devices used in the wagons manufactured by the party of the second part, then this contract shall be void. Parties of the second part further agree to canvass and push the sale of said wagons in the territory allotted them, so far as they deem it mutually advantageous to the parties hereto, and use every reasonable endeavor to supply the demand. It is hereby agreed that the stipulations contained in this contract shall apply to and bind executors, administrators, and successors, or assigns of the respective parties.      L. D. Hurd.

"J. C. Sampson.

"Gere, Truman, Platt & Co."

The action was brought to recover royalties alleged to have accrued under said instrument in favor of the patentees named therein for wagons manufactured and sold by the defendants. The said Sampson assigned his interest in the claim in suit to the plaintiff prior to the commencement of the action. The defendants, by their answer, interposed as a defense the invalidity of the patent mentioned in said contract, and on the trial introduced evidence tending to establish such invalidity. The issues in the case were referred, and on the report of the referee judgment was entered for $9,391.43 damages, and costs, in favor of the plaintiff and against the defendants, from which the latter have appealed to this court. Other facts are stated in the opinion.

Argued before LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Tracey, Boardman & Platt (Benjamin F. Tracey, of counsel), for appellants.

Reynolds & Brown (Charles H. Brown, of counsel), for respondent.

PUTNAM, J.   It is claimed by the appellants that under the contract above set out the patentees conveyed to the defendants, for the whole territory of the United States, for the full term of the patent, all benefits and advantages accruing thereunder, and hence the latter, under the writing, were in fact assignees, and not mere licensees, and as assignees could assert and show the invalidity of the second patent as a defense to the action.  Herzog v. Heyman, 151 N. Y. 587–592, 45 N. E. 1127.  We are unable to concur in the views of the appellants that under the contract they are to be regarded as assignees.  We think the writing indicates an intent on the part of the contracting parties to grant a license, and not to assign the patents.  In the first place, the language used ("The parties of the first part hereby license, authorize, and empower the parties of the second part to manufacture and sell," etc.  "The parties of the second part agree to pay to the parties of the first part the sum of two dollars and fifty cents as a royalty or license fee on each and every wagon," etc.  "The parties of the second part further agree to canvass and push the sale of said wagons," etc.) indicates the intent of the parties to confer a license on the defendants, and not to assign the patents.  The fact that license fees were reserved on each and every wagon to be sold evinces a like intent.  It is true that a reservation of royalties, where in unmistaken language there is an assignment of patent rights, will not convert such assignment into a license, as held in the case of Littlefield v. Perry, 21 Wall. 205; but such reservation in a contract like that under consideration is almost conclusive as to the intent of the parties.

Again, it will be observed that in the contract the right to manufacture and sell is not given to the defendants and their assigns. In the opinion in Factory v. Corning, 14 How. 193–216, it was said:

"A mere license to a party, without having his assigns, or equivalent words to them, showing that it was meant to be assignable, is only the grant of a personal power to the licensees, and is not transferable by him to another."

In the opinion delivered in Oliver v. Chemical Works, 109 U. S. 74–83, 3 Sup. Ct. 65, it was said:

"In the present case there are no words of assignability in either instrument. The right is granted to Morgan alone,—to him personally,—with an agreement by him that he will enter on the manufacture of the self-raising flour, and that

he will use all his business tact and skill to introduce and sell the flour. It is apparent that licenses of this character must have been granted to such individuals as the grantor chose to select because of their personal ability or qualifications to make or furnish a market for the self-raising flour, and thus for the acid, all of which was to be purchased from the grantor."

So, in the instrument in question, there are no words of assignability. It contains no more than a mere license to the defendants personally, and an agreement by the latter to canvass and push the sale of the wagons.

But it has been held that an assignment of a patent short of the entire and unqualified monopoly is a mere license. Theberath v. Manufacturing Co., 3 Fed. 143; Tuttle v. La Dow, 54 Hun, 149, 7 N. Y. Supp. 277; Pitts v. Jameson, 15 Barb. 310–315; Gayler v. Wilder, 10 How. 477. The contract in question empowers the defendants to manufacture and sell, but not to use, the patented article. It did not, therefore, transfer the entire and unqualified monopoly. It has been held by the United States supreme court that the omission of the words "to use" in such an instrument renders it a mere license, and not an assignment. Waterman v. MacKenzie, 138 U. S. 252–257, 11 Sup. Ct. 334. In the opinion delivered in the case cited, it is said:

"The next instrument in order of date is the 'license agreement' between them of November 20, 1884, by which she granted to him 'the sole and exclusive right and license to manufacture and sell fountain penholders containing the said patented improvements throughout the United States.' This did not include the right to use such penholders, at least if manufactured by third persons, and was therefore a mere license, and not an assignment of any title, and did not give the licensee the right to sue alone, at law or in equity, for an infringement of the patent."

The cases of Turnbull v. Plow Co., 14 Fed. 108, and Nellis v. Manufacturing Co., 13 Fed. 451, to which we are referred by the learned counsel for the appellants, if holding any other or different doctrine, must be deemed overruled by the subsequent case of Waterman v. MacKenzie, supra. We conclude, therefore, that the defendants should be regarded as licensees, and not as assignees.

The referee found that the defendants continued to manufacture wagons containing the improvement and device covered by the letters patent mentioned in the contract from its date up to the 19th day of June, 1888; that they had reported and paid the license fee on 1,718 of said wagons, leaving 2,500 of said wagons manufactured and sold on which no royalties had been paid. As a conclusion of fact he found: "The said firm of Gere, Truman, Platt & Co., after the making of said contract, and up to the time of the commencement of this action, never in fact renounced the license granted to them under and by virtue of said contract, and never notified the said patentees that they should manufacture wagons, including the said devices contained in said patents, in hostility to, and in defiance thereof, on the ground that the said patents were invalid;" and also the following conclusion of law: "That the said firm of Gere, Truman, Platt & Co., during all of the time of the manufacture of said wagons by them, as hereinbefore found, were the licensees of the said plaintiff and the said Sampson, and cannot, therefore, ques-

tion or dispute the validity of the patents held by the plaintiff, or the plaintiff and Sampson, mentioned in or covered by the said licensed agreement,"—to which findings the defendants excepted.

It seems to be well settled that a mere licensee of a right to use a patented invention is liable for royalties agreed to be paid,—unless the patent has been revoked or annulled by proper legal proceedings,—while he continues to manufacture under such patent, unless he renounces the license, refusing to act thereunder, and gives notice of such revocation to the licensee. Marston v. Swett, 82 N. Y. 526; Skinner v. Machine Co., 140 N. Y. 217, 35 N. E. 491. Not taking into account a provision in the contract in question which will be hereafter considered, and considering the defendants as mere licensees, the legal conclusion of the referee above quoted is sustained by the authorities. We are also inclined to concur in the above-quoted finding of fact. The letters of the defendants of April 7, 30, and May 8, 1895, copies of which are contained in the case, do not, we think, amount to that clear, definite, and unequivocal notice of the renunciation of the contract, held to be necessary in Skinner v. Machine Co., supra. They appear to us to be entirely insufficient for that purpose. Except the statement in the letter of April 7th: "We find that a patent was issued in 1856 on a device exactly such as we are now using,"—the letters in question contained nothing in the way of a repudiation of the license; and that statement cannot be deemed a sufficient notice of renunciation, under the authority above cited.

It follows that the conclusion reached by the referee should be sustained, unless the following clause in the contract, viz.: "It is further mutually agreed that in the event of its being shown that the patents herein referred to are not valid, or do not cover the features or devices used in the wagons manufactured by the party of the second part, then this contract shall be void,"—leads to a different result. This provision, we think, should be deemed inserted in the writing for the benefit of both parties. The patentees, in case of such invalidity, might elect to terminate the license contract, and not to remain responsible under their covenant, contained therein, for damages on account of infringements resulting from the manufacture and sale of the wagons by the defendants. The defendants could also take advantage of the provision. But it is not apparent that it gave the latter any greater or other right than they would have had if the provision had been omitted. Had such been the case, and the patents proved invalid, they would have had power, if they wished so to do, to at once have renounced the license, and refused to manufacture and sell thereunder. If such a provision had been omitted, the law would have given them the same right to rescind the contract, in case of the invalidity of the patents, as the provision in question gave them. But they would not have been compelled to rescind. They could have relied on the guaranty of the patentees contained in the contract to protect them from damages for infringements, and continued to manufacture and sell under the license. So, notwithstanding the clause in the contract providing that, in the event of its being shown that the patent was

invalid, the contract should be void, the defendants could, unless the patentees objected, elect to continue to manufacture and sell the wagons under the license. The provision in question should be understood to mean that, if the patents shall be hereafter shown to be invalid, the contract shall be void, at the election of the parties. In that case, either party could terminate the license; but they were not compelled to. They could continue the contract in force. The patents have never been adjudged invalid in any legal proceeding, and the patentees might deem them valid, and therefore not take advantage of the provision allowing them to cancel the contract. The defendants might, in the absence of an adjudication that the patents were invalid, elect to manufacture and sell wagons under the license, relying on the guaranty of the patentees to protect them from damages on account of infringements of other patents, and to waive the benefit of the clause in the contract in question. A party may waive a constitutional or statutory provision (Vose v. Cockcroft, 44 N. Y. 415; Hilton v. Fonda, 86 N. Y. 339), or a condition in a contract in his favor (Nichols v. Mase, 94 N. Y. 160–165).

In Skinner v. Machine Co., at page 224, 140 N. Y., and page 493, 35 N. E., it is said:

"A licensor is entitled to assume that his license remains such until the latter, by a clear, definite, and unequivocal notice, * * * throws off the protection of the license, and stands admittedly an infringer if the patent is valid. The licensor is not to be left in a doubtful or uncertain position. He must not be exposed to the double danger of being defeated in a suit for infringement by a plea of license never effectually or authoritatively renounced, or, if he sues for royalties, of being beaten because there was merely an infringement, if anything."

We see no reason to doubt that the doctrine thus enunciated applies to this case. The defendants were licensees under the contract authorizing them to manufacture and sell wagons under patents specified therein. Although the contract provided that it should become void if the patents in question should be shown to be invalid, the defendants were not compelled to take advantage of this provision. They might elect to continue the contract in force. If they did elect to terminate the relation of licensor and licensee existing under the contract between them and the patentees, we think it was their legal duty to at once distinctly and clearly notify the latter of such election. The same reason exists in this case for such a notice as in Skinner v. Machine Co., supra. No such notice was given, as appears from the evidence, from the defendants to the plaintiff. The letter of April 7, 1887, was as follows:

"L. D. Hurd, Esq., Wellsville, N. Y.—Dear Sir: Replying to your favor of the 6th inst., would say that we, of course, have shipped more wagons than was included in our report to you; but they are wagons from our own patterns, and, of course, are not covered by your patents. We find that a patent was issued in 1856 on a device exactly such as we are now using.
"Yours, very truly,                                    Gere, Truman, Platt & Co."

The following letters were also subsequently written by the defendants to the patentees:

"Owego, Tioga Co., N. Y., April 12, 1887.
"W. L. Sampson, Esq., Elmira, N. Y.—Dear Sir: Referring to your favor of the 11th inst., would say that the falling off in the number of wagons reported

to you on the 1st inst. is due to the fact that many of the wagons furnished since January 1st to our trade have been built on a plan not covered by the patents in which you are interested.

"Yours, very truly,　　　　　　　　　　　　　　·　　Gere, Truman, Platt & Co."

"April 30, 1887.

"W. L. Sampson, Esq., Elmira, N. Y.—Dear Sir: With this we return our copy of patent. We are advised, by what we consider good authority, that we do not infringe on claim in patent sent herewith.

"Yours, very truly,　　　　　　　　　　　　Gere, Truman, Platt & Co."

"Owego, Tioga Co., N. Y., July 2, 1887.

"L. D. Hurd, Esq., Wellsville, N. Y.—Dear Sir: We credit your account this day $54.67, two-thirds royalty on 41 wagons manufactured and sold from April 1st to July 1st under your patents.

"Yours, very truly,　　　　　　　　　　　　-　　Gere, Truman, Platt & Co."

"Owego, Tioga Co., N. Y., July 2, 1887.

"W. L. Sampson, Esq., Elmira, N. Y.—Dear Sir: With this we hand you our check for $23.33, one-third royalty on 41 wagons manufactured and sold from April 1st to July 1st, under the Hurd patents.

"Yours, very truly,　　　　　　　　　　　　Gere, Truman, Platt & Co."

Instead of indicating an election to rescind the contract, these letters show a contrary intent. The letter of April 7th was not a renunciation of the license, and the subsequent letters treated the contract as in force. That of July 2d, inclosing a check for royalties on wagons manufactured and sold from April 1 to July 1, 1887, clearly shows that the parties treated the contract as in full force, and the payment was made by the defendants after they were informed of the patent issued in 1856.

The plaintiff contends that his patents are not invalid. If, instead of commencing this action, he had instituted one against the defendants for an infringement of his patents by them in manufacturing and selling 2,500 wagons since April 1, 1887, is it not clear that they could have successfully defended on the ground that such wagons were manufactured and sold under a license granted by the patentees? They could, in such an action, have successfully claimed that although, in the letter of April 7th, they notified the patentees of the patent of 1856, they did not then by it renounce the license, and that the subsequent letters and subsequent payment of royalties on wagons manufactured and sold up to July 1, 1887, showed that after the letter of April 7th the parties treated and regarded the license contract as in full force. We think the doctrine stated in the opinion in Skinner v. Machine Co., supra, applies. If the defendants intended to renounce the license in consequence of the invalidity of the patent, they were bound to say so; to notify the plaintiff of their election; to act in the matter so that the plaintiff would be in a position to maintain an action for an infringement of the patent. The letters above quoted contain no such notice. On the contrary, they show an election by the defendants to go on and manufacture and sell wagons under the license contained in the contract after they had notice of the existence of the prior patent. Notwithstanding the provision in the contract in question that, in case the invalidity of the patent should be shown, the contract should be void, we see no reason to doubt that the parties, if they chose, could continue to treat and regard the contract as in force, and that

50 N.Y.S.—16

the defendants could still manufacture and sell wagons in pursuance of the license contained therein. This we think the defendants did, because they failed to notify the patentees of a renunciation of the license, and because, after they had notice of the prior patent, they paid royalties for wagons manufactured and sold from April 1 to July 1, 1887, and thus elected to treat the contract as in force. And there is no testimony in the case showing that after the letter of July 2, 1887, which clearly indicated their election to continue the license, they gave any notice to the patentees of any other or different election.

Other questions are raised in the briefs of counsel, which the conclusion above arrived at renders it unnecessary to discuss.

The judgment should be affirmed, with costs. All concur.