General Aniline & Film Corporation v. Commissioner.
GAF v. Commissioner
Docket No. 110042.
United States Tax Court
1943 Tax Ct. Memo LEXIS 373; 1 T.C.M. (CCH) 880; T.C.M. (RIA) 43166; April 6, 1943
*373 Martin Saxe, Esq., 76 William St., New York City, and Roger H. Anderson, Esq., 76 William St., New York City, for the petitioner. Harold D. Thomas, Esq., for the respondent. HARRON Memorandum Opinion HARRON, Judge: The Commissioner determined against petitioner, as a withholding agent, a deficiency in tax of $138,750 for 1940. The question arises under section 144 of the Internal Revenue Code. Petitioner contends that the payments were not subject to withholding. All the facts are stipulated. [The Facts] Petitioner, a domestic corporation, had its principal office in New York City. During 1940 petitioner paid $925,000 to I. G. Farben, a German corporation, having its principal place of business at Frankfurt, Germany: a foreign corporation which was not engaged in trade or business within the United States and which had no office in the United States. The payments were made pursuant to four agreements dated March 18, 1940, and one agreement dated May 4, 1940, between I. G. Farben, hereinafter called I.G., and petitioner. In each agreement it is stated that I.G. sells and assigns to petitioner its entire right, title, and interest in and to the United States patent rights listed *374 in an attached schedule. The agreements are hereinafter referred to as "B," "C," "D," "E," and "F." Separate assignments were made by I.G. and were recorded in the United States Patent Office during the year 1940. The separate assignments, two of which are in evidence, were in slightly different form. In one assignment, Exhibit "G," it is stated that petitioner is entitled to an interest in certain inventions and letters patents, and in another assignment it is stated that petitioner is desirous of acquiring the full and exclusive rights in and to the inventions within the United States of America. Both assignments used the phraseology describing the transfer from I.G. as "sold, assigned, and transferred" and the assignment purports to sell, assign, and transfer the full and exclusive right to the inventions and letters patents. Also, the assignor transfers to petitioner all rights of recovery in any suits for past infringement, including all damages and profits recoverable. The consideration paid and to be paid under the agreements was as follows: agreement "B," petitioner agreed to pay $180,000 on the date of execution; agreement "C," $500,000, on the date of execution; agreement *375 "D," $20,000 on the date of execution; agreement "E," $125,000 on the date of execution; and agreement "F," $100,000 on the date of execution. Under all of the agreements, excepting agreement "B," additional payment were to be made by petitioner out of the net profits or other income derived by petitioner from the manufacture and sale of products made by it under the assigned patents, in excess of stated amounts; "C," 25 per cent of net profits in excess of $125,000 was 25 per cent of $500,000); was 25 per cent of $2,000,000); "D," 25 per cent of net profits from the date of the agreement until September 20, 1955; "E," 25 per cent of net profits over and above $500,000 (the down payment of $125,000 was 25 per cent of $500,000); "F," 25 per cent of net profits (the down payment of $100,000 was 25 per cent of $400,000). In each of the five agreements it is provided, in substance, that petitioner: "agrees that it will not assert any rights under the said patent rights against I.G. and/or its licensees, in the event that products, compositions of matter, and/or articles of manufacture covered by such patent rights are imported from Germany into the United States by I.G. and/or its licensees." *376 The wording of the above clause differs somewhat in some of the agreements, but it is substantially the same in all of the agreements. In agreement "E" the following provision appears: "So long and to the extent that GAF (petitioner) is not able to supply the requirements of the American market, I.G. is free and has the right to import products, compositions of matter, and/or articles of manufacture coming within the scope of the assigned patent rights." A similar provision appears in agreement "F." In agreements "B," "D," and "E" petitioner agrees that it will confine to the United States "its manufacture and sale of products, compositions of matter, and/or articles of manufacture which come within the scope of the assigned patent rights." In all the agreements the assignment made under each agreement is subject to all prior commitments of I.G. and include certain exclusive obligations to various named corporations. The initial payments made in 1940 upon the execution of the five agreements aggregated $925,000 and respondent treated them as royalties subject to the withholding provisions of the Internal Revenue Code. In order to stop the running of interest, petitioner paid the *377 collector $137,750 together with interest thereon, on account, on or about June 10, 1942, subsequent to the time the petition was filed, February 27, 1942. Petitioner contends that the assignments and agreements were effective to convey an entire monopoly and that they may not be construed to constitute a mere license. Respondent contends that the agreements were license agreements and that the payments thereunder were royalties or in the nature of royalties and thus subject to the withholding tax. [Opinion] The question is to be determined in respondent's favor if the assignments fell short of conveying out of the transferor, I.G., its entire monopoly under the patents, Waterman v. MacKenzie, 138 U.S. 252, and the particular terminology used is not controlling, Six Wheel Corporation v. Sterling Motor Truck Company of California, 50 Fed. (2d) 568, 571. The provision in each agreement which causes the greatest doubt is the provision under which petitioner agrees that it will not assert any rights under the patent rights against I.G. and/or its licensees in the event that products covered by the patents are imported *378 into the United States by I.G. and/or its licensees. The right conferred by a patent is the mere right to exclude others from making, using, or vending the invention, Talbor v. Quaker State Oil Refining Co., 104 Fed. (2d) 967. Where a patentee transfers less than an undivided share of his exclusive right to make, use, and vend an invention throughout the United States, or of his exclusive right within a specific part of the United States, the transfer is a license, giving the licensee of title in the patent. Becton, Dickinson & Co. v. Eisele & Co., 86 Fed. (2d) 267, certiorari denied, 300 U.S. 667. Thus if a patentee assigns all of his interest under his patent in a certain area, but reserves to himself the right to sell articles of his own manufacture under the patent within the same territory, the assignment does not convey the complete interest of the patentee in the patent within the territory named, but is a mere license. Hussey v. Whitely, Case No. 6950, 12 Federal cases, p. 1067. See also, California Electrical Works v. Finck, 47 Fed. 583, 584, where *379 it is stated that when the patentee assigns the exclusive right to another person within defined territorial limits, he confers upon the purchaser the same rights which he previously had within the limited territory and "excludes himself from the rights of the patent within the assigned territory." Petitioner argues that the reservation in I.G. of the right to import any articles covered by the patents into the United States is in the nature of a license back. This contention does not appear to be sound. Before entering into the agreements, I.G. had the right to sell throughout the United States. Under the assignments it conveyed to petitioner all of the rights to manufacture in the United States, with the exception of prior commitments, but it did not give petitioner the exclusive right to sell in the United States, because of the provision in question. It appears that I.G. had similar patents in Germany. Under the agreements, it was free to manufacture under the patents in Germany and export to the United States for sale. In our opinion the provision in question was a reservation in the transferor and was not in the nature of a license back. That being so, it must be concluded *380 that the agreements constituted a license rather than an assignment of a complete monopoly. There is considerable doubt whether I.G. conveyed to petitioner the use of the patents as well as the right to manufacture and sell. If a contract gives a transferee the right to manufacture and sell, but not the right to use the patents or articles made thereunder, it is a mere license, Hurd v. Gere, 50 N. Y. Supp. 235; Waterman v. MacKenzie, supra. Failure to assign the use, again, makes the assignment fall short of a transfer of unqualified and entire monopoly. Throughout the agreements there is a strong indication that the object of the transfer was to grant petitioner rights to manufacture and sell products coming within the scope of the patents. That, along with the fact that there is no specific mention of a transfer of the right of use, at least raises the question whether the right of use was conveyed. In some of the agreements it is stated that the understanding of the parties is that the main purpose of the agreement is to place petitioner in position to exploit the assigned patent rights by its own manufacture and to *381 supply the requirements of the American market from such manufactures. The word "if" precedes reference to the possibility of petitioner's granting any license under the patents and petitioner agrees that if it enters into any licensing arrangements, it will have due regard for the main purpose of the agreement, as stated above. In our opinion, petitioner has failed to show that the assignments were not licenses. The assignments fell short of transferring an exclusive right to make, use, and vend under the patents throughout the United States and its territories. Accordingly, respondent's determination is sustained. Decision will be entered for the respondent.