## HYDE et al. *v.* CULVER et al.

Advances made to the captain and owners of a steamer in the home port, to enable him to pay for stores and provisions for the boat, arrears of wages due the crew, and for expenses due to third persons upon merchandize shipped on the steamer, confer no privilege; the party by whom the advances are made is not legally subrogated to the privileges of the furnishers of provisions and crew. The word *supplies* in the 8th paragraph of art. 3204 C. C. applies to materials sold or furnished to the vessel, and not to advances of money.

The 7th paragraph of art. 3204 applies to sums lent the captain, at a port not the home port, in the absence of the owner, and for the necessities of the vessel, that she may be enabled to complete her voyage.

Advances made to the captain and owner of a steamer in a home port, to enable him to pay charges due to other parties on merchandize, in order to procure it as freight for his steamer, are not such advances as are contemplated by paragraph 8 of art. 3204 of the Civil Code.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Reynolds*, for the plaintiffs. *Van Dalson* and *Micou*, for the appellants. The judgment of the court (*King*, J. absent,) was pronounced by

SLIDELL, J.    The question presented in this cause is whether the plaintiffs are entitled to a privilege upon the steamer Yazoo. The claim is resisted by *Hunt & McDonogh*, subsequent purchasers.

The material facts are as follows : *Morrison & Co.*, of whom *John Eaton* was a partner, sold the steamer at New Orleans, in May, 1847, to *Culver*, then a resident of New Orleans, where the boat was enrolled in his name.   On the 2d August, 1847, the plaintiffs advanced at New Orleans, to *Culver*, then the captain and owner of the boat, the sum of $12,000 ; and took *Culver's* draft upon himself at St. Louis, at three days sight, for that amount, which *Culver* accepted at St. Louis, on the 14th August.   The petition alleges, and the evidence shows, that this sum was advanced by plaintiffs to *Culver*, for the purpose of enabling him to pay for stores and provisions for the boat, arrears to the crew for wages, and freight and charges due other parties upon goods shipped by the Yazoo at New Orleans, for St. Louis.   We understand by the latter item, that the Yazoo had obtained the carriage of these goods to St. Louis, upon condition of advancing to the New Orleans consignees the freight and charges previously incurred in bringing them to New Orleans from other ports.   On the 17th August, 1847, *Culver* sold the steamer to *Eaton*, and, on the 14th September, 1847, *Eaton* sold her to *Hunt & McDonogh* of St. Louis, who upon the levy of the sequestration issued in this cause claimed the boat.   The vessel was dully enrolled in St. Louis in the names of *Eaton* and *Hunt & McDonogh* respectively.   She arrived here, in October, 1847, and was seized on the 15th of that month.

As there is no sufficient ground to dispute the ownership of *Hunt & McDonogh*, the case rests upon a question of privilege.

The advance was made to the owner, at the vessel's home port; and under the authority of repeated decisions of our predecessors, conferred no privilege. In the case of *Grant* v. *Fiol*, 17 La. 158, the intervenors, *Sloo & Byrne*, claimed a privilege for a sum of money which, they alleged, was loaned by them to the owner of the vessel, and was applied to the payment of the ship-carpenter, sail-maker, and crew of the vessel, in order to enable her, by the payment of those claims, to prosecute her intended voyage.   It was then held that the expression *supplies*, (fournitures), used in the 8th paragraph of art. 3204 of the Civil Code, applied to materials sold or furnished to the vessel, not to money or funds advanced.   It was also held that the subsequent application of the money by the ship-owner to the payment of carpenters, sail-maker, and crew, privileged creditors, did not operate to the lender's benefit; that there was no legal subrogation, and no conventional subrogation was pretended ; that privileges were *stricti juris*, and not to be extended by implication or analogy.   The doctrine laid down in *Grant* v. *Fiol*, was reiterated in the cases of the *Agricultural Bank* v. *The Barque Jane*, 19 La. p. 1, and *Hill* v. *The Phœnix Tow Boat Co.*, 2 Rob. 36.

The case of *Grant* v. *Fiol* is in accordance with the french authorities. The 8th paragraph of the article 3204 is taken almost verbatim from the french Code de Commerce.   The same meaning is attributed there to the expression "fournitures."   See Boulay Paty, vol. 1, p. 599.   It is also the doctrine there, that those who have lent the owner money to pay workmen, &c., have no privilege, unless they have taken a subrogation.   "On ne peut, par aucune raison

d'analogie, étendre ce privilége à ceux qui auraient fourni des somnes d'argent, quoique pour les mêmes objets. Ces prêteurs ont dû, suivant ce que nous avons dit no. 219, se faire subroger aux droits de ceux que leur argent servait à payer, s'ils voulaient être substitués à leur privilege : ou bien, ils devaient prêter à la grosse." Pardessus, Droit Commercial, part. 4, tit. 8, ch. 1, no. 954. See also Deville & Massé, *verbo* Navire, § 5, no. 74.

But the district judge considered this case as falling under the 7th paragraph of article 3204. We do not concur in this opinion, and a brief notice of the paragraph is proper. Its language is : "Sums lent to the captain, for the necessities of the ship during the last voyage, and the reimbursement of the price of merchandize sold by him for the same purpose." It is taken without change from the french Code of Commerce, art. 191, no. 7.

The paragraph undoubtedly applies to sums of money lent to the captain at a port not a home port, in the absence of the owner, and for the necessities of the vessel, that she may be enabled to complete her voyage. This is obvious from the expression "during" the last voyage : "pendant le dernier voyage." The intention of the law-giver may also be ascertained by looking at the adjoining words, according to the familiar rule, noscitur a sociis. The paragraph associates with "sums lent to the captain for the *necessities* of the ship *during the last voyage*," "the reimbursement of the price of merchandize sold by him for the *same* purpose." The only case in which the extraordinary power can be exercised by the captain, of selling a part of the merchandize laden on board his vessel, is where he is compelled by imperious necessity to do so, in order to enable him to carry on the residue. The two classes of claims are therefore properly associated, and they take rank over the claims enumerated in the following paragraphs (nos. 8 &c.) although the latter are precedent in point of time, upon the reasonable and just principle that it is to be presumed, if the necessary expenditures, to meet which the loans were obtained or the cargo was sold, had not been made, the vessel would not have been able to return : sine quibus navis salva provenire non poterat. The french commentators are concurrent in this interpretation, and its correctness seems to us unquestionable. See Rogron, Code de Commerce, notes to art. 191. Delvincourt, vol. 1d, notes to page 185. Pardessus, Droit Com. no. 954. Le Nouveau Valin, tit. 1, p. 7, *et seq.* Ord. of Wisbuy, no. 45.

We have not deemed it necessary to enlarge upon the peculiar character of the object for which the advance was in part obtained, to wit : to pay charges to other parties for anterior freight, and thus to get freight for the steamer. We do not wish however to be considered as recognizing such an object as falling within the purview of the 8th paragraph of art. 3204.

It is, therefore, decreed, that the judgment of the court below appealed from, be reversed, and that there be judgment in favor of the claimants, *Daniel B. Hunt* and *William McDonogh*, with costs in both courts.