## THE CANARY No. 2.[1]

*(Circuit Court, S. D. Alabama. June, 1884.)*

1. LIEN UNDER LOUISIANA LAW FOR MONEY ADVANCED.
    Under the laws of Louisiana advances of money to the captain or owners of a vessel can only be privileged when advanced under imperious necessity to save the ship, or enable her to complete her voyage, and that the furnisher of moneys to a ship to pay for wages, supplies, and expenses has no privilege unless there is a legal or conventional subrogation. La. Civil Code, arts. 2160, 2161, 3237.

2. STATE LIEN UNDER MARITIME LAW.
    Where a creditor claims the benefit of a state statute which purports to give a lien, he must take it subject to all the conditions which the state statute imposes. *The Edith*, 94 U. S. 518, followed.

1Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

3. DURATION OF LIEN UNDER LOUISIANA LAW.

The privilege (lien) enjoyed by creditors for cause, anterior to the sale of a vessel, is lost if a sale is made in port and a voyage is thereafter made in the name and at the risk of the purchaser, unless the purchaser shall have some notice, actual, legal, or constructive, of the claim and privilege. La. Civil Code, arts. 3242, 3243.

Admiralty Appeal.

*Hannis Taylor*, for libelant.

*I. L. & G. L. Smith*, for claimant.

PARDEE, J. The case made establishes the libelant's lien for advances, supplies, and labor under the laws of Louisiana for $634.32, upon the Canary No. 2, which is properly enforceable here, provided (1) the law of Louisiana gives a lien for advances of money to the captain and owners to pay the general running expenses of the ship; and (2) that the lien has not been lost by the *bona fide* sale of the ship in port, and a voyage made in the name and at the risk of the purchaser without any claim interposed. The lien under the laws of Louisiana for moneys advanced to pay the running expenses of the ship is given, if given at all, by article 3237, Rev. Civil Code, which provides:

"The following debts are privileged on the price of ships and other vessels in the order in which they are placed. * * * (7) Sums lent to the captain for the necessities of the ship during the last voyage, and reimbursement of the price of merchandise sold for the same purpose. (8) Sums due to sellers, to those who have furnished materials, and to workmen employed in the construction, if the vessel has never made a voyage; and those due to creditors for supplies, labor, repairing, victuals, armament, and equipment previous to the departure of the ship, if she has already made a voyage. (9) Money lent on bottomry for refitting, victualing, arming, and equipping the vessel before her departure. * * * The term of prescription of privileges against ships, steam-boats, and other vessels shall be six months."

This article of the Louisiana Code is of long standing, and has been judicially interpreted in relation to the questions involved here, on several occasions, and that interpretation must be considered as of the highest authority. That interpretation has been uniform, and is to the effect that advances of money to the captain or owners of a vessel can only be privileged when advanced under imperious necessity to save the ship or enable her to complete her voyage, and that the furnisher of moneys to a ship to pay for wages, supplies, and expenses has no privilege unless there is a legal or conventional subrogation. See *Hyde* v. *Culver*, 4 La. Ann. 9; *Grant* v. *Fiol*, 17 La. 158; *Hill* v. *Phœnix Tow-boat Co.* 2 Rob. 35; *Wickham* v. *Levistones*, 11 La. Ann. 702; *Owens* v. *Davis*, 15 La. Ann. 22; *Bank* v. *Bark Jane*, 19 La. 1.

The case made here shows no subrogation, legal nor conventional, as either is expressly defined in Louisiana law. See Rev. Civil Code, arts. 2160, 2161. In fact, the learned proctor for libelant claims no subrogation, except such as results from the general maritime law, in favor of one who lends money to pay off maritime liens, and which

money is so applied. See Cohen, Adm. 243. The trouble is that the lien sought to be enforced in this case is not a maritime lien, but a domestic lien, which has force only as the laws of Louisiana give it force. Under the maritime law there is no lien upon a vessel for materials furnished and work done in repairing her at her home port, and where a creditor claims the benefit of a state statute which purports to give such lien, he must take it subject to all the conditions which the state statute imposes. See *The Edith,* 94 U. S. 518. This view of the case is fatal to libelant's pretensions, in so far as many of the items (amounting to more than the balance sued for) in his account are concerned.

The other point made against libelant's lien, under the authority of *The Edith, supra,* is conclusive against the entire demand. The lien of libelant, being one claimed under Louisiana law, is subject to the conditions imposed by Louisiana laws. Now the undisputed facts of this case are that after the advances made by libelant to the Canary No. 2, which was then lying in the home port, a demand was made upon the master and managing owner for payment, which was promised to be made as soon as the boat could be sold and the price paid by the purchaser. No other demand was interposed or notice given. Within a few days after this demand and promise the boat Canary No. 2 was purchased by the present claimants for the sum of $2,300. This purchase was made after an examination of the records for outstanding claims, and, apparently, in the best of faith, without notice of libelant's demand. Exactly when the demand was made upon the former captain and owner does not appear, but the record shows that the account was closed February 23, 1883, that the boat was sold March 24, 1883, and that libelant's demand was registered with the recorder of mortgages of the parish of Orleans, Louisiana, May 7, 1883, and that the boat was libeled in the port of Mobile May 23, 1883.

The evidence shows that after the sale to claimants and the execution of proper title, the said Canary No. 2 made the voyage from New Orleans, Louisiana, to the port of Mobile, Alabama, in the name and at the risk of the purchasers. The only matter in evidence that can be claimed as in any way attacking the good faith of the purchasing parties is the fact that they required and received an indemnifying bond from the vendors. But when it is considered that the purchasers were only prudent in protecting themselves from outstanding maritime liens, and that their purchase was open, and their possession and voyage free from concealment and deceit, it would seem that the exaction of the indemnifying bond, unsupported by other evidence, should have little weight in establishing bad faith in the purchase.

Now article 3242 of the Revised Civil Code of Louisiana reads:

"When a sale has been made, the vessel being in port, the creditors of the vendor, who enjoy the privilege for some cause anterior to the act of sale,

may demand payment, and enforce their rights over the ship until a voyage has been made, in the name and at the risk of the purchaser, without any claim interposed by them."

And article 3243 reads:

"But when the ship has made a voyage in the name and at the risk of the purchaser, without any claim on the part of the privileged creditors of the vendor, these privileges are lost if she was in port at the time of sale."

These articles are indisputably provisions in the interest of, and for the protection of, the purchasers of ships. No decisions of the Louisiana courts have been cited, and I am aware of none, construing and interpreting these articles; but from their language and object it is clear that the proper meaning and construction is that the privilege enjoyed by creditors for cause anterior to the sale is lost if a sale is made in port, and a voyage is thereafter made in the name and at the risk of the purchaser, unless the purchaser shall have some notice, actual, legal, or constructive, of the claim and privilege. Exactly what notice the purchaser shall have, to prevent the extinction of the privilege, whether by record or suit, it is not necessary to decide in this case, because no notice whatever is proved. To hold that mere demand of payment of the debtor would be a sufficient interposition of the claim to continue the lien in force, would be to practically nullify the object and purpose of the articles in question.

Under this view of the law of Louisiana, and the facts of the case as recited, the lien of the libelant on the Canary No. 2, under the laws of Louisiana, if it existed at all, was lost by the subsequent sale and voyage of the ship, and it cannot be enforced in this court. And this conclusion does not operate any great hardship, because, as we have seen, the libelant, with his demand in hand and executory, had full notice of the intention of his debtor to sell the ship, was satisfied to rely on a promise to be paid from the proceeds of the sale, and then rested quietly 60 days before attempting to follow the privileged property in the hands of an apparently *bona fide* purchaser. If, as appears from the evidence, the claimants here are *bona fide* purchasers for value, it would seem to be rank injustice to allow libelant with his secret lien to consent to a sale, (for his acquiescence amounted to consent,) give no notice, and then after 60 days of slumber, and after new liens and new responsibilities have attached, come into court and enforce his demands against innocent parties. No such results were contemplated by, nor can be permitted under, the unusually wise and beneficient laws of Louisiana, for articles 3242 and 3243 of the Revised Code, *supra*, clearly to my mind provide against them.

A decree will be entered dismissing the libel in this case, with costs, but without prejudice to libelant's rights to enforce his demand against the former master and owners of the Canary No. 2.