UNION SWITCH & SIGNAL CO. v. JOHNSON RAILROAD SIGNAL CO.

(Circuit Court of Appeals, Third Circuit. May 24, 1894.)

No. 18.

1. AUTHORITY OF AGENT TO SELL PATENT—INTERPRETATION OF POWER OF ATTORNEY.

A power of attorney which, in consideration of a prescribed royalty, appoints the donee sole agent in the United States "for the purpose of working and developing the business of said patents," with power to "negotiate the sale of the said patents upon terms to be agreed upon," does not give the agent power to grant an exclusive license, which would transfer substantially the entire interest in the patent; but it does authorize him to grant nonexclusive licenses to manufacture and sell.

2. ASSIGNMENT OF PATENT—INTERPRETATION OF CONTRACT.

A contract which purports to convey, for a prescribed royalty, the sole and exclusive right and license to make, use, and sell in the United States the improvements covered by a patent for the full term thereof, is in substance a virtual if not an actual sale. 59 Fed. 20, affirmed.

3. UNAUTHORIZED SALE BY AGENT—RATIFICATION.

The sale, by an agent who had authority to grant nonexclusive licenses only, of an exclusive license transferring in substance the entire patent, may be held good as a nonexclusive license, when the licensees have been misled by the ambiguous language used by the principal in conferring power on the agent, and especially when the principal has long recognized them as licensees, although, in so doing, he was unaware that their license purported to be exclusive.

4. POWER OF ATTORNEY—CONTRACT IN ATTORNEY'S NAME—VALIDITY.

It seems that when a contract which may be made by parol is put in writing, merely for convenience and certainty of proof, as in the case of a nonexclusive license to make and sell under a patent, the fact that the writing purports to be made under a power of attorney, but is executed by the attorney in his own name, will not render the contract void.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

This was a bill by the Johnson Railroad Signal Company against the Union Switch & Signal Company, for infringement of letters patent No. 241,246, issued to Frederick Cheeswright, for "improvements in electric railroad signal apparatus." Cheeswright, by a power of attorney, which is set out in the opinion, constituted one Yeomans his attorney in fact in the matter of the patent, and defendant claims under a conveyance by Yeomans, dated March 21, 1882. Plaintiff claims title to the same patent under a power of attorney from Cheeswright to Henry Bezer, dated October 31, 1889, and an absolute assignment of the patent from the latter. The case was heard in the circuit court on a motion for leave to file a cross bill, and for an order for substituted service (43 Fed. 331). Afterwards, a motion by the cross complainant for an order for an injunction was denied (51 Fed. 85). A decree was finally rendered for complainant (59 Fed. 20). Defendant appealed.

George H. Christy and S. Schoyer, Jr., for appellants.

George W. Miller and Wm. R. Blair, for appellees.

Before DALLAS, Circuit Judge, and BUTLER and GREEN, District Judges.

BUTLER, District Judge.   The plaintiffs filed a bill against the defendants for infringement of the Sykes patent for "improvement in electric railroad signal apparatus," granted to Frederick Chees-Wright (assignee of the inventor, Sykes), numbered 221,246, dated May 10, 1881.   The defendants answered denying the right set up and, under a claim of title and charge of infringement by the plaintiffs, filed a cross bill.   Issues were duly formed and proofs taken; and after hearing a decree was entered in the plaintiffs' favor—for an injunction, and an account of profits since October 31, 1889.

From this decree the defendants appealed, and filed the following specification of errors:

"(1) That the court erred in finding that the original complainant, the Johnson Railroad Signal Company, had a good title to, or was the lawful owner of the patent for infringement of which the suit was brought, and as such could maintain an action against this appellant for the infringement thereof.

"(2) That the court erred in not finding that this appellant, the Union Switch & Signal Company, was the lawful owner of, or had a good title to the exclusive right under the patent for an alleged infringement of which the suit was brought.

"(3) That the court erred in finding that the assent of Frederick Chees-wright was essential as a condition precedent to the validity of the right and title claimed by this appellant.

"(4) That the court erred in finding that the proofs failed to show that Cheeswright assented to, or ratified the instrument of March 21, 1882, under which this appellant claims the exclusive right under the patent sued on, or that he acquiesced therein after knowledge.

"(5) That the court erred in not finding that the proofs show that Chees-wright had knowledge of the said instrument of March 21, 1882, and that he acquiesced therein after knowledge.

"(6) The court further erred in finding that the grant of exclusive license from D. M. Yeomans to this appellant, by instrument dated March 21, 1882, was a sale of the patent.

"(7) The court erred in failing to hold that a grant of an exclusive right under a patent was a proper and lawful method of working and developing the business of the patent in question.

"(8) The court erred in construing the instrument of September 10, 1881, executed under the hand and seal of Cheeswright to D. M. Yeomans, and in pursuance of which, the said Yeomans, by the said instrument of March 21, 1882, conveyed to the appellant an exclusive right to the use of the patents therein described, to be a power of attorney merely, and that the same created an agency personal to the said Yeomans alone, and not to his assigns, and, therefore, not transferable.

"(9) The court erred in not holding that the instrument of September 10, 1881, was a valid vesting in Yeomans of the rights and interests therein described, for the purposes in said instrument mentioned, and that said rights and interest so vested were irrevocable.

"(10) The court erred in finding or holding that the right or license under the patent in suit, granted to this appellant by the Yeomans' instrument of March 21, 1882, was revoked or terminated under the authority purported to be granted to one Bezer by Frederick Cheeswright.

"(11) The court erred in holding that the instrument executed by Yeomans on March 21, 1882, was not binding upon Frederick Cheeswright.

"(12) The court further erred in not holding that the attempted revocation by Cheeswright, by the instrument dated October 31, 1889, of Cheeswright to Henry Bezer, was ineffective, as against the appellant.

"(13) The court erred in not finding that the alleged revocation by Chees-wright, by the instrument dated October 31, 1889, or by his alleged agent, Bezer, was ineffective as against this appellant prior to notice of revocation duly given to this appellant.

"(14) The court further erred in not holding that by the instrument of September 10, 1881, the said Yeomans acquired an interest which was irrevocable by the said Cheeswright.

"(15) The court erred in finding that this appellant had done any act in infringement of the patent sued on.

"(16) The court erred in not finding and holding that the Johnson Railroad Signal Company had infringed the letters patent in suit, and violated the exclusive rights vested in this appellant, as set forth in the cross bill.

"(17) The court erred in allowing an accounting of all sums of money due from this appellant under the instrument in writing between defendant and D. M. Yeomans, dated March 21, 1882, and unpaid on October 31, 1889.

"(18) The court erred in failing to find the original complainant was estopped by the acts of certain of its officers from bringing the original action against this appellant, or from asking for an injunction or an accounting or other relief therein.

"(19) The court erred in allowing complainant costs under the original bill.

"(20) The court erred in failing to sustain the cross bill, and in not granting to this appellant the relief therein prayed or grantable thereunder, with costs.

"(21) The court erred in failing to dismiss the original bill for want of jurisdiction in equity."

It is unnecessary to consider these assignments separately. Collectively, they present the following questions:

First. Have the plaintiffs title? If they have, then,

Second. Have the defendants rights under it? Other subordinate questions raised will be considered in answering these.

As respects the first, we agree with the circuit court; the plaintiffs have title, and no more need be said on the subject at present.

As respects the second question we are unable to agree with that court. We believe the defendants acquired rights under the patent, through their contract with Yeomans, which still exist. To determine what the rights are requires a construction of Cheeswright's contract with Yeomans, which is as follows:

"To All to Whom These Presents shall Come:

"I, Frederick Cheeswright, of St. Dunstan's Buildings, St. Dunstan's Hill, in the city of London, notary public, proprietor and assignee of 'Sykes' Patent Lock and Block-Signals for Railways,' under and by virtue of patent for the United States of America, dated the 26th April, 1881, and numbered 240,622, and patent also for the United States of America, dated the 10th May, 1881, and numbered 241,246, do hereby for myself, my heirs, executors, administrators and assigns, appoint D. M. Yeomans, esquire, of Lexham Gardens, South Kensington, London, gentleman, my sole agent for the United States of America, for the purpose of working and developing the business of the said patent in those parts, for and in consideration of a payment to be well and truly made by the said D. M. Yeomans to me, the said Frederick Cheeswright, my heirs, executors, administrators and assigns, as royalty, of four pounds per lever, British money, for every lever fitted upon any railway in the United States to which 'Sykes' System of Signaling' may be attached or connected, with power for the said D. M. Yeomans to negotiate the sale of the said patents, upon terms to be agreed upon.

"In witness whereof I have hereunto set my hand and seal, this 10th day of September, one thousand eight hundred and eighty-one.

"[Seal.]                                         Frederick Cheeswright."

This language, as the circuit court justly says, "is somewhat indefinite; and involved the exercise by Yeomans of a reasonable degree of discretion." The instrument is not a simple power of attorney; it has many of the characteristics of an exclusive license. Yeomans is to "work and develop the business of the patent

* * * for and in consideration of the payment" of four pounds for each lever used. By the terms "work and develop," the parties contemplated the employment of such means as are commonly used to render patents valuable to their owners. These means are various. One of them is by sale of the patent; another is by manufacturing and selling the patented article; another is by granting licenses, and thus inducing others to manufacture and sell. The first was withheld by the terms of the contract. The second was not, we may assume, contemplated. The capital required to enter upon such manufacture, advantageously, was doubtless beyond Yeomans' control; and if it was not, he could hardly be expected to employ it in such manufacture under an authority which, as the defendants claim and the court has found, was liable to be revoked at Cheeswright's will. The third was therefore probably the only available means open to him, or contemplated by either party. Yeomans consequently entered into contract with the defendants. He undertook to give them an exclusive license, embracing the entire territory covered by the patent, and running for the full period of its life. We agree with the circuit court that this was a virtual, if not actual sale, and was therefore in excess of his authority. What constitutes a sale of a patent, as an abstract question, need not be discussed. It is sufficiently considered in Nellis v. Manufacturing Co., 13 Fed. 451; Pickhardt v. Packard, 22 Fed. 532; Waterman v. MacKenzie, 138 U. S. 252 [11 Sup. Ct. 334]; 2 Rob. Pat. § 763; and Curt. Pat. pp. 241–243. The terms of Cheeswright's contract with Yeomans leave no doubt in our minds that Cheeswright did not intend to confer authority to transfer substantially the entire interest in the patent, as such exclusive license, if enforced, would do.

We also unite in the view that the exercise of this excess of authority was not ratified by Cheeswright. While his correspondence and testimony show that he knew the defendants had acquired privileges under the patent they do not show that he was aware of their extent, or the claim set up under them.

It follows that the defendants have not an exclusive right to the use of the patent; and that their cross bill cannot be sustained.

It does not follow, however, that the plaintiffs' bill can be sustained. As we have seen, and as the circuit court held, Yeomans had authority to grant nonexclusive licenses to manufacture and sell. In our judgment he had authority to do anything and everything usually done in rendering a patent profitable short of selling it. This we think is the plain import of the language used. The restraint upon his authority is imposed in plain terms, and is limited to selling alone. Why, therefore, should not Yeomans' contract with the defendants be held available to transfer what he had authority to convey—a nonexclusive license to manufacture and sell? A deed for a fee, where the grantor has a life estate only, is none the less available for the transfer of this. The plaintiff cannot be injured by such construction of the contract; and equity plainly requires it. The defendants, in taking the transfer, acted in good faith, as the circuit court has found; and they have continued to act in good faith under it. Their mistake respecting Yeomans'

authority is attributable to Cheeswright's indefinite and ambiguous language; and as before remarked, the error, with the license so construed, can do him and his assignees no harm; while to the defendants, who were thus misled into the expenditure of money and the preparation for an extensive business, it may result in serious loss, and certainly would if we adopted the plaintiffs' views. Furthermore Cheeswright was cognizant for years, that they had acquired rights under the patent—at least that they were manufacturing and selling, presumably under license, and not only did not object, but recognized their rights, and claimed to be paid the royalties thus earned. It is true he was unaware (so far as appears) that the license was exclusive in terms; but that is unimportant here. The justice of this view is, to a limited extent, conceded; and the decree, in consequence, relieves the defendants from liability for infringement prior to the revocation of Yeomans' authority. But why should the effect of the license be so limited—why should the revocation annul it? It was granted while the authority was in full force. The defendants were not agents or attorneys of Yeomans, and liable to be affected by his dismissal. They are purchasers of a license without limitation as to time, and irrevocable. As well might it be said that railroad companies purchasing signals and rights to use them would lose the fruits of their purchases by the subsequent annulment of Yeomans' authority. Granting that Yeomans' authority might be revoked (and we believe it might under the doctrine of Willcox & Gibbs S. M. Co. v. Ewing, 141 U. S. 627 [12 Sup. Ct. 94]), all acts previously done in pursuance of it remain in force.

It is urged that Yeomans' contract with the plaintiffs is fatally defective because the paper witnessing it is not in Cheeswright's name. The paper recites the power of attorney and is made in pursuance of it. The objection is purely technical, without color even of substance. Rarely has this doctrine been applied in modern times to a case where the instrument bore evidence that it was executed in pursuance of the power, without the court feeling called upon to excuse itself for doing so. Still if the defendants' right grew out of the paper alone, —that is if the license could only be created by writing,—the defective execution (if it is defective) would present difficulty. The right does not, however, grow out of the paper, but out of the contract, of which the paper is evidence simply. The law does not require such a paper to create or support a license; Walk. Pat. (2d Ed.) § 303; 3 Rob. Pat. §§ 806, 809; Buss v. Putney, 38 N. H. 44; Potter v. Holland, 4 Blatchf. 206 [Fed. Cas. No. 11,329]; Baldwin v. Sibley, 1 Cliff. 150 [Fed. Cas. No. 805]; Jones v. Berger, 58 Fed. 1006. Where a paper is used it is simply for convenience and certainty of proof. The authorities cited by the plaintiffs, relate to the defective execution of papers for the transfer of land, patents, etc., where the writing is essential to the transfer. No case is cited in which the technical rule there stated has been applied to any other paper. We need not determine, however, whether this distinction is well founded or not; for if the paper in question was necessary to support the license, and its execution is defective, the defect has

been cured by Cheeswright's conduct. He recognized and acted upon the license. His correspondence and testimony—saying nothing of Yeomans' testimony—show this very plainly. He was unaware of the terms in which it was expressed, and the claim set up under it, but it may be assumed that he was aware the terms were not more favorable to himself than the construction we have placed upon those used; for as we have seen the license when thus construed is consistent with the power granted to Yeomans, and is the most available means of doing what he desired to accomplish,—in other words it is such a license as he authorized, and knew was most likely to be granted.

Until Yeomans' authority was revoked and the defendants had knowledge of it, their settlements with him were a discharge of liability. For any moneys which may have become due since, settlement must be made with the plaintiffs. How the account stands we are not called upon to determine. The parties disagree about it, and the question is one principally of figures. If there is anything due the courts of the state have jurisdiction and afford adequate remedy. The suit is not based on such a claim.

The decree must therefore be disaffirmed and the bill dismissed with costs. The case is remanded to the circuit court to carry out this order.