## CHAUCHE et al. v. PARE.

### (Circuit Court of Appeals, Ninth Circuit. June 1, 1896.)

### No. 264.

1. PATENTS—ASSIGNMENT BY ATTORNEY IN FACT—LACK OF AUTHORITY.

A resident of France, who had obtained an American patent, constituted a resident of California his attorney in fact, with full authority to grant licenses on terms therein expressed, and also with authority to assign the patent, but on terms and conditions to be "agreed on and approved by the grantor, or every bargain closed will be void." The attorney thereafter, without referring the matter to his principal, transferred in his own name, as grantor, to plaintiff, his executors, etc., "the exclusive liberty, license, power, and authority to make, use, and sell" the machines in all the states and territories of the Union for the remainder of the term of the patent. Held, that this was an assignment of the patent, and was void as such, both because made in excess of the attorney's authority, and because it was his own act and deed, and not that of his principal.

2. SAME—RATIFICATION BY PRINCIPAL.

After this transfer to plaintiff, the attorney wrote his principal that he had sold "the license at the price and conditions mentioned in your power of attorney." Thereafter the principal, in a letter to plaintiff, relating mainly to the value of the invention, and the proper method of exploiting it, used expressions indicating that he understood and recognized that plaintiff had the sole right, for the remainder of the term of the patent, to make and sell in the United States; and afterwards he transmitted to plaintiff a copy of a letter which he had written to certain alleged infringers, in which he pointed out that they must suppress certain parts of their machines, or else come to an agreement with "my licensee in the United States," etc. In a second letter to the assignee, he tells the lat-

ter that, if he wishes to give up the "license," he would take it back. *Held*, that these letters all indicated that the patentee understood the plaintiff to have merely a license, and they consequently did not amount to a ratification of the assignment which the attorney had attempted to make.

3. SAME—ACTION BY LICENSEE.

A mere licensee has no authority to sue infringers in his own name.

In Error to the Circuit Court of the United States for the Northern District of California.

This was an action at law by A. S. Pare against Marie E. Chauche, executrix, and others, for alleged infringement of a patent. In the circuit court a verdict was given for plaintiff. To review the judgment entered thereon, defendants sued out this writ of error.

Wheaton, Kalloch & Kierce, for plaintiffs in error.

J. J. Scrivner and M. B. Kellogg, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and MORROW, District Judge.

GILBERT, Circuit Judge. The plaintiffs in error were the defendants in an action brought to recover damages for the infringement of letters patent issued on June 3, 1884, to Dominique Lille, for an improvement in fruit presses. On May 22, 1885, the patentee, who resided in France, executed to Aime Pare, of Fresno, Cal., a power of attorney, with authority and upon terms therein expressed to grant licenses to manufacture and sell machines containing the invention for and during the life of the patent, also authority to transfer and assign said patent, "but at prices, charges, clauses, and conditions agreed on and approved by the grantor, or every bargain closed will be void." Concerning the power to assign the patent, there were inserted also the following provisions: "However, it is understood that the said Lille's consent and approval will follow sufficiently either from a letter or from a telegraphic dispatch addressed by him on receipt of notice." "It is understood that the grantor reserves the right of approving the sales only when the cession of patents is concerned, and not for the cession of license which the attorney shall have full power to make under the conditions above stipulated." On August 28, 1886, under the authority conveyed by this instrument, the attorney therein named transferred unto the defendant in error, Antoine S. Pare, his executors, administrators, and assigns, "the exclusive liberty, license, power, and authority to make, use, and sell within and throughout all the states and territories of the United States of America, for and during the residue or remainder of the term for which the said letters patent are or may be granted, the said invention (improvement in wine or fruit presses), upon the terms and conditions herein contained." This assignment, instead of being made in the name of the patentee, is, by its expressed terms, an assignment from Aime Pare, the party of the first part, to Antoine S. Pare, the party of the second part, and is executed under the hand and seal of the said party of the first part, and not for and on behalf of the patentee. It contains, however, the following recitals:

"Whereas, letters patent of the United States of America were granted and issued to Dominique Lille, of the republic of France, and a resident of Troncens, in the department of Gers, France, for an improvement in fruit presses, said letters patent bearing date the 3rd day of June, 1884, and are numbered 299,815, as will more fully appear by reference thereto; and whereas, the said Dominique Lille did, by an instrument in writing, on the 22d day of May, A. D. 1885, authorize and empower the said Aime Pare, party of the first part, to convey and dispose of, by license, on a stated and fixed royalty, the said invention and letters patent, within all the states and territories of the United States of America aforesaid, as will also more fully appear by reference thereto."

Upon the trial, the defendants in the action disputed the authority of the plaintiff therein to maintain the action under the rights conferred upon him by the assignment, and contended that the instrument was void and ineffective to transfer to him any interest in the patented invention, or right to damages for its infringement, and the court so held. The plaintiff thereupon proceeded to offer in evidence certain communications that had passed between the attorney, Aime Pare, and his principal, the patentee, whereby it was claimed that the latter had ratified the transaction of his agent. The court admitted these communications in evidence, ruled that their contents were sufficient to prove such ratification, and instructed the jury that the instrument purporting to be an assignment, taken together with such subsequent acts of ratification on the part of the patentee, were sufficient to transfer his interest in the patented improvement to the plaintiff. This instruction of the court to the jury, and the admission in evidence of the communications referred to, together with the exclusion of evidence offered by the plaintiffs in error to prove an assignment to them from the patentee of his demand for damages for the infringement, are the principal assignments of error.

There can be no question that, under the power of attorney, the agent had full authority to assign the patent. But it is equally clear that his authority could be exercised only upon terms that should first be communicated to and accepted by his principal. The purported assignment, therefore, was clearly insufficient to transfer a title to the patent, not only because it was the act and deed of the agent, and not that of his principal (Machesney v. Brown, 29 Fed. 145, and cases there cited), but for the further reason that the agent exercised a power not conferred upon him. in that he made a transfer of the patent without communicating the terms of the sale to his principal, or obtaining his approval thereof (Johnson Railroad Signal Co. v. Union Switch & Signal Co., 59 Fed. 20; Union Switch & Signal Co. v. Johnson Railroad Signal Co., 10 C. C. A. 176, 61 Fed. 940).

The letters the contents of which were held to furnish conclusive evidence of a ratification of the assignment on the part of the patentee were written during the period of 2½ years succeeding the date of the assignment. The first was written to the patentee by his agent on September 20, 1886, and contains the following:

"I made up my mind, and wrote to my brother [the defendant in error], and explained to him the situation. I told him that, if he was not to give me the money required, I was to abandon this business. He immediately sent

me the funds, and, later on, I made him consent to buy the license, at the price and conditions mentioned in your power of attorney."

This is the only letter in the record which contains direct information concerning the extent of the interest sold, and the terms and conditions of the sale. The agent here distinctly informs his principal that he has sold, not the patent, but a license; and he makes that fact doubly clear by saying that the sale has been made at the price and conditions mentioned in the power of attorney. The price and conditions mentioned in that instrument referred only to the transfer of a license. The terms upon which an assignment or "cession" of the patent might be made were not expressed. They were to be fixed after conference with the patentee. The agent was powerless to assign the patent upon terms to be fixed at his own discretion. His authority to grant privileges under the patent without the concurrence of his principal was limited solely to the transfer of licenses. It is in the light of the information afforded to the patentee by this first letter from his agent that the subsequent correspondence must be viewed. On December 28, 1886, the patentee thus wrote to the defendant in error:

"If I had taken my patent in the United States at first, the duration might have been of 17 years; but, nevertheless, you will have the privilege, at the expiration of the patent, to possess all the relation for the manufacture of my system, and you will receive as in the past the orders. In one word, there is an infallible prospect, there is only to manufacture on a large scale. For this, if necessary, organize a small company, because, to make money, the cash must not be wanted. If you pay cash, your fournisseurs will allow you great reduction. In this enterprise there can be no risk, first, because you are the only one who has the right to exploiter my system in the United States."

On April 23, 1887, the defendant in error wrote the patentee:

"I have no definite plans for the manufacture of the machines; most probably will have them made by different manufacturers. * * * I inclose two drawings to give you an idea of the manner we are going to make the machines this year. Tell me what you think of it."

On October 21, 1888, the patentee wrote to the defendant in error:

"I send you herewith the duplicate of a letter which I send to-day to the address below, concerning a lawsuit which you have instituted against Toulouse and Delorieux. I believe you are in the right."

The inclosed duplicate letter is addressed to the attorney of Toulouse & Delorieux. After referring to the rival presses of Toulouse & Delorieux, it contains the following:

"Now, then, if these gentlemen wish to continue to build similar machines, all they have to do is to suppress the pieces I have pointed out, or else enter into an agreement with Mr. Pare, my licensee in the United States, for the development of my system of presses. The latter may make arrangements with several manufacturers, assigning to each a special territory. This is, sir, what my licensee is entitled to have your clients observe strictly, and failing to do which he must prosecute them to the full extent of the law."

On October 31, 1888, the patentee wrote to the defendant in error. After mentioning certain men who might be consulted with reference to disputed points in the patent, he proceeded thus:

"If you will believe so, ask them the proof, if it is for that reason that you brought the lawsuit. * * * As for the power of attorney, I have looked it

over, and see that you have the right to make, in general, all necessary proceedings. Consequently, it is useless for me to make such a trip. I will go only later on, or, if you wish to give up the license, I will take it back. You have only to renounce by a simple letter, and paying what is due to me."

On December 20, 1888, the defendant in error wrote the patentee concerning the rival machines that were being manufactured by Toulouse & Delorieux, and says:

"But, no sooner the United States decide in my favor, I shall no more be friendly, and I will let them know my mind; also, the three other manufacturers who are infringing. * * * As soon as the court will have finally decided the validity of your patent, I will pay the royalty upon all machines sold by me."

The last of the letters bears date February 2, 1889. It contains similar expressions to those found in the preceding correspondence, and adds nothing material to the force or effect thereof.

We find nothing in any of these letters to indicate that the patentee was aware that his agent had made an assignment of the patent, or that he ever received information from which that fact might be deduced. All the expressions found in the correspondence point to the conclusion that the patentee understood the defendant in error to be, as indicated in the first letter, a licensee only. If the letters prove ratification, they prove the ratification of the transfer of a license, and not the ratification of an assignment. Such being their purport, it was error to charge the jury that the letters connected with the attempted conveyance from the agent to the defendant in error constitute a conveyance to the latter. As licensee, the defendant in error had no authority to maintain the action. Birdsell v. Shaliol, 112 U. S. 486, 5 Sup. Ct. 244; Waterman v. Mackenzie, 138 U. S. 52, 11 Sup. Ct. 334. The judgment is reversed, with costs to the plaintiffs in error, and a new trial is ordered.